LittletoN, Judge,
delivered the opinion of the court:
The broad question in this case is whether the plaintiff is entitled to recover any amount under either or both of the contracts, no. 555 with the Army, and no. 57340 with the Navy, for the construction of airplanes. If recovery can be had the questions arise as to the items on which he is entitled to recover under each of the contracts.
Plaintiff contends with reference to Army contract no. 555 that the defendant breached the same by failing and refusing to make all the biweekly payments of $2,000 each absolutely provided to be made under art. Y (2) thereof; that it also breached the contract by capriciously changing the basis of the progress reports after such basis had been approved and payments made thereunder over a long period and in failing to make accrued payments for direct labor expended by plaintiff contrary to the spirit of the contract; and, finally, that the defendant breached this contract by canceling it on May 12, 1924, on the ground that the plaintiff had breached the same by failing to complete the work called for thereby within the time specified when, in fact, the defendant itself was then, and had been for some time, in default.
On the other hand the defendant contends that the plaintiff breached this contract on March 15, 1923, and that such breach continued until the contract was canceled by the defendant on May 12, 1924, because of continued default of the plaintiff; that section 3648 of the Revised Statutes U.S.C.A. tit. 31, sec. 529, prohibited the defendant from paying any amount in excess of the percentage of the'progress of work under the contract, which, it is contended, represented the value of services performed; that because of the failure of plaintiff to complete the contract and deliver the completed articles called for therein, the defendant received nothing for the $62,951.82 paid and judgment should, therefore, be rendered in its favor on its counterclaim for this and two other amounts of $910.30 for testing and $545 for certain equipment for the airplanes furnished by the defendant, as mentioned in the findings, totaling $64,407.12, from which should be deducted $13,688.03, being the amount *333 of the voucher issued in favor of plaintiff on Navy contract no. 57340, hereinafter mentioned, leaving a balance of $50,719.09. Although credit is not given plaintiff in- the counterclaim for the amount of $5,000 offered by the defendant in connection with one of the changes ordered, defendant’s counsel states that probably the plaintiff should receive credit for this item, and if the counterclaim should be sustained there would be a balance due the defendant of $45,719.09.
We cannot sustain the contention of the defendant that the plaintiff breached this contract on March 15, 1923, the date on which the finance officer wrote him that the sum of $51,727.61 already paid was 35 percent of $148,000, the contract price, exclusive of the profit of $22,000, and that the progress which the plaintiff had made on the contract up to that time was but 27 percent. In the first place the progress which the plaintiff had made on the work to March 15, 1923, under the approved method of computation was in excess of 35 percent, and the finance officer was not correct in finding that only 27 percent progress had been made. Further than this, the failure to keep the percentage of completion of the contract at all times in excess of the payments provided for therein was not necessarily a breach of the contract and would give the defendant no right to cancel the same on that ground alone unless some provision of the contract so provided. At most, the inability of the plaintiff to make progress equal to the percentage of the total payments called for on any date within the period allowed for delivery of the articles would only give the defendant the right to postpone the installment payments called for in the contract until the value of the work performed equaled the percentage of payments made computed on the basis of the entire contract price rather than upon only a portion thereof. Although the contract provided in art. VIII that the Government might terminate it at any time by written notice from the contracting officer, in which event the plaintiff would be entitled to compensation as provided in paragraph 2 of said article, as set forth in finding 5, the defendant did not terminate the contract under this provision, but canceled *334 it on the ground that the plaintiff had breached the same, and demanding at the same time the return of the amount paid thereunder. It is our opinion from the facts with reference to this contract that the defendant breached the same in refusing to make payment to the plaintiff of the amounts called for by the contract after the payments to May 1923. This contract was wholly experimental, and it was recognized and stated therein that the consideration named was not, in and of itself, commensurate with the work called for. At the time the last payment for direct labor was made, the entire contract was about 42 percent completed. The progress of the work was necessarily delayed from June 16 to about October 1, 1923, while consideration was being given by defendant’s officials to the question whether a greater number or more powerful engines should be installed in the airplane. This delay was not caused by plaintiff. During this period the plaintiff’s expenses for labor and overhead were going on and as soon as this matter was disposed of plaintiff proceeded with the work and made further progress toward completion. When he resumed work about October 1, 1923, he found that the defendant’s officials in the meantime had changed the percentages theretofore approved and used in computing the percent of progress on the work and had prescribed different factors to be used for this purpose which very materially reduced the percentage of progress toward completion of work called for by the contract.
The facts establish that under the terms of this contract and by reason of its nature, the first method of determining progress of the work was correct and that the second method prescribed by the defendant was erroneous. When the plaintiff on February 4, 1924, was compelled to discontinue operations because of lack of funds, this contract was more than 60 percent complete. The evidence justifies the conclusion that if the defendant had paid to the plaintiff the installment payments called for by this contract, as were justified by the correct percentage of completion, and had also paid to the plaintiff the amount due under Navy contract no. 57340 for the first airplane, plaintiff would not *335 have been compelled to close his plant and would have been able to complete the articles called for by both contracts.
In view of the foregoing we are of opinion that the defendant breached contract no. 555 at least as early as June 16, 1923, at which time the percentage of progress toward completion of the contract was about 42 percent and this breach continued until February 4, 1924, when plaintiff ceased work. Overstreet v. United States, 55 C.Cls. 154. Plaintiff was justified in discontinuing work under the contract. He is therefore entitled to retain the amounts paid and to recover, in addition thereto, as damages, his actual expenditures for direct labor in excess of the amount paid, the cost of materials purchased for and used on the contract, which materials and the uncompleted airplanes became the property of the defendant, and also the profit provided in the contract. Overstreet v. United States, supra. Plaintiff’s expenditure for direct labor performed on this contract was $19,100.56 in excess of the amount of $26,951.82 paid. The cost of materials entering into the uncompleted airplanes acquired especially for the construction thereof and on hand at the time plaintiff ceased work under the contract was $8,389.49. The profit provided in the contract was $22,000. The total of these three items is $50,090.05. From this amount should be deducted $545, representing cost to the defendant of making certain tests of engine nacelle and landing gear for the plaintiff.
Count 1 of the defendant’s counterclaim for the amount of $62,951.82 paid to the plaintiff under this contract is denied and count 2 for $910.30, representing certain equipment furnished by the defendant for installation in the two airplanes is also denied for the reason that this equipment remained the property of the defendant. Upon cessation of work under the contract plaintiff tagged and stored all material, equipment, and the uncompleted airplanes for the defendant’s account and asked for shipping instructions, which were not given. The basis of the second item of the counterclaim is that the equipment was retained and appropriated by plaintiff, although required by the terms of the contract to be returned to the defendant. As stated above, this allegation is not supported by the record.
*336 We think this contract did not contemplate that the defendant could avail itself of the privilege of cancellation under art. VIII (1) after it had breached the contract and the plaintiff had ceased work on account of such breach even if it had undertaken to do so. The defendant’s breach of the contract was substantial, and thereafter it really had nothing left to cancel. Probably the plaintiff would have proceeded with the work if it had had sufficient funds notwithstanding the breach of the contract by the defendant, but such shortage of funds after the breach cannot now, we think, be availed of by the defendant in the circumstances of this case in order to escape liability. The defendant at no time acted under art. VIII (1) of the contract although it was fully aware of the right to do so, and it does not in this case rely upon that provision. In a contract to make a complete structure with agreements for installment payments, a failure to make a payment at the time specified is a breach which justifies the abandonment of work. Canal Co. v. Gordon, 6 Wall. 561. In Anvil Mining Go. v. Humble, 153 U.S. 540, the court held that whenever one party to a contract is guilty of such a breach as is here attributed to the defendant the other party may treat the contract as broken, and may abandon it, and recover as damages the profits he would have received through full performance, which measure of profits was within the intent of both parties when the contract was made, and could be ascertained without difficulty.
In Howard v. Stillwell & Bierce Mfg. Co., 139 U.S. 199, 206, the court said: “ But it is equally well settled that the profits which would have been realized had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or of remoteness, or where from the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they were within the intent and mutual understanding of both parties at the time it was entered into.” See also Benjamin v. Hillard, 23 How. 149, 167; United States v. Behan, 110 *337 U.S. 338, 345; Cincinnati Gas Co. v. Western Siemens Co., 152 U.S. 200; Guerini Stone Co. v. Carlin, Construction Co., 248 U.S. 334, 343-345; United States v. Burton Coal Co., 273 U.S. 337; Houston Construction Co. v. United States, 38 C.Cls. 724.
In United States v. Stage Co., 199 U.S. 414, the court said: “ The same principles of right and justice which prevail between individuals should control in the construction and carrying out of contracts between the Government and individuals,” and in Hollerbach, v. United States, 233 U.S. 165, the court held that “ a Government contract should be interpreted as are contracts between individuals, with a view to ascertaining the intention of the parties and to give it effect accordingly, if that can be done consistently with the terms of the instrument.”
We have considered the case of College Point Boat Corp. v. United States, 267 U.S. 12-17, but we think the case at bar is distinguishable upon its facts. The College Point Boat case arose under the act of June 15, 1917, 40 Stat. 182, giving the United States the right to suspend, cancel, or requisition any existing or future contract for the building, production, or purchase of ships or material and providing that when the United States should cancel, modify, or suspend any contract in accordance with that act, it should make just compensation therefor, and if the amount determined should be unsatisfactory to the person entitled to receive the same he should have the right to recover such further sum as, added to the amount paid, would make up such amount as would be just compensation therefor, in the manner provided for by section 145 of the Judicial Code. Soon after the armistice on November 11, 1918, the Government informed the College Point Boat Corporation that the material called for by the contract would probably not be needed, suggesting that it stop operations, and asked it to submit a proposition for cancellation of the contract. Negotiations followed and efforts to procure consent to cancel proved futile. The Government had a right to cancel the contract but was not aware of it. The stopping of the work was therefore an anticipatory breach of the contract. With *338 out prejudice to the rights of either party the United States made a partial settlement by taking over the raw material which the corporation had purchased, or contracted for, and the corporation brought suit in this court to recover the further amounts claimed. There was in law no cancellation of the contract by the Government before suit was brought. The contract did not contain any clause authorizing cancellation other than for the default of the plaintiff and there was no such default. There had been no substantial default by the United States before notifying the company to stop operations, but the United States actually had an unconditional right of cancellation inasmuch as the contract was made pursuant to the act of June 15, 1917. The court held that the plaintiff was only entitled to recover just compensation, and that prospective profits were not recoverable for the reason that the continuing right of cancellation, which was asserted later in court, operated to curtail the damages recoverable; that it limited the value of plaintiff’s right to require performance, and, hence, the amount and character of loss for which compensation must be made.
In the present case the plaintiff seeks to recover damages for a breach of the contract by the defendant, and the act of June 15, 1917, is not applicable. The authority therein conferred expired January 2, 1922.
It is also contended by the defendant that plaintiff did not ship to it the uncompleted airplanes and the materials and, for that reason, it is not entitled to retain the amount of $62,951.82 paid. Inasmuch as the defendant breached the contract, para. 2 of art. VIII of the contract did not apply and plaintiff was under no obligation to ship the uncompleted airplanes and the materials to. defendant. Plaintiff asked for instructions with reference thereto and advised the Government that the uncompleted articles and materials were being held for its account. We think he was required tó do no more.
Judgment will be entered in favor of plaintiff under contract no. 555 for $49,545.05.
With reference to Navy contract no. 57340, plaintiff contends (1) that the defendant breached this contract by mak *339 ing an unreasonable number of changes in plans and drawings, and in design of the airplanes called for thereunder, which changes occurred practically throughout the entire time the contract was in effect and prevented plaintiff from completing his work thereunder; (2) that defendant breached the contract by causing delays in the work while changes in drawings and design were being taken up, considered, and put into effect, and by the negotiation of all such changes and the additional costs thereunder, all of which prevented plaintiff from completing the work called for; (3) that the defendant breached this contract by requiring changes to be made in the general design and principal strength members of the airplanes, and in failing and refusing to authorize equitable compensation therefor and for the delays incident to such changes contrary to paragraph 7 of the contract; (4) that the defendant breached this contract by canceling the same on the ground of failure to complete within the contract period when the defendant itself was in default by bringing about a condition where the contract could not be completed within the time specified.
On the other hand, the defendant admits that the plaintiff is entitled to the amount of $13,688.03 allowed for the first airplane delivered under this contract, payment of which was withheld, and, in addition, the amount of $5,000 allowed and offered to- the plaintiff for the delay and cost of the change requiring the strengthening of the fuselage members of the airplane, totaling $18,688.03, but contends that <->no further amount should be allowed plaintiff for the reason that the defendant did not breach the contract by ordering changes or by making modifications of and corrections in the drawings during progress of the work; that the contract provided that the contractor should make his own detailed drawings and that the original drawings furnished by the defendant were “not guaranteed either as to accuracy or completeness ”, and that the contractor “ may use on his own responsibility the details shown by the drawings or may develop his own details under the supervision of the naval inspector at the contractor’s work, so long as the general design and principal strength parts are not altered ”; and finally, it is contended that the plaintiff was delinquent with *340 respect to all airplanes called for by this contract except the first one and that the Government had a right to and did cancel the contract under the provision thereof to the effect that “ It is agreed that the Government may cancel this contract without liability on the part of the Government if the contractor is delinquent on any of the above deliveries.”
The material provisions of Navy contract no. 57340 calling for 26 airplanes and the facts with reference to what the defendant did in the way of ordering changes and submitting to the plaintiff additional drawings showing modifications and corrections of errors in the original drawings are fully set forth in the findings and need not be repeated here. Applying those facts to the provisions of this contract, we are of opinion that the defendant did not breach the same and we are also of the opinion that the defendant cannot be held liable for plaintiff’s total expenditures for labor, materials, and overhead in the performance of work under this contract as damages for the alleged unreasonable changes and delays. We think plaintiff assumed responsibility under the contract for any loss resulting from his following the original drawings which were not accurate, or from any delay which may have resulted because of the necessity of making changes in the parts manufactured in order to make them suitable and accurate. We think it was incumbent upon the plaintiff under the terms of the contract to make certain that the drawings were complete and accurate before proceeding with the manufacture of any of the parts, and that those drawings submitted to him by the-Naval Aircraft Factory subsequent to the signing of the contract, containing modifications and corrections of errors in the original drawings discovered by the defendant’s officials in the construction of an airplane similar to those called for by this contract, were for his information. Whatever delajr might have been occasioned, due to any changes made as a result of suggestions contained in the corrected drawings furnished by the Naval Aircraft Factory, cannot be classed as unreasonable. Plaintiff seeks to hold the defendant for a breach of the contract on account of delay resulting from many modifications and corrections of errors *341 in the drawings suggested by the Naval Aircraft Factory on the ground that it was necessary to take these matters up with the naval inspector at the plant, but we cannot sustain this claim. Plaintiff assumed responsibility for the correctness of the original drawings and was charged with the duty of making correct drawings if there were errors and of making certain that the parts manufactured were suitable and proper. The corrections in the drawings sent to plaintiff by the Naval Aircraft Factory were for his information and guidance. The contract required the plaintiff to develop the detailed drawings under the supervision of the naval inspector at the plant. It appears that the total number of modifications and corrections of errors suggested by the Naval Aircraft Factory was approximately 462, all of which seem to have been adopted and followed by the plaintiff, and that plaintiff suggested and made 149 changes on his own account in the original drawings due to errors and discrepancies therein discovered by him previous to starting work on the parts. It appears that the delay resulting from the errors discovered in the original drawings and the modifications suggested by the Naval Aircraft Factory and by the plaintiff, exclusive of changes ordered in writing by the Bureau of Supplies and Accounts, did not exceed two and one half months. It seems to us that it was to the plaintiff’s advantage to have the benefit of the defendant’s experience in the construction of an airplane of the same design at its factory, and its suggestions as to modifications in the original drawings and errors that should be corrected in order to make a perfect airplane.
Although this was a production contract its nature was such as to require that the details be worked out upon the first airplane. The provisions of the contract were so drawn as to relieve the defendant from responsibility because of any errors discovered in the original drawings or any loss that should be sustained by the contractor from having to change parts manufactured in accordance with the original drawings, except as to changes ordered in writing by the Bureau of Supplies and Accounts involving an increase in cost under the contract.
*342 Although the first airplane was completed and tendered for inspection and acceptance six months after it was due under the contract, the defendant did not hold the plaintiff delinquent with reference to completion and delivery of the first airplane, but terminated and canceled the contract for delinquency of the plaintiff in delivery of the remaining 25 airplanes.
On the whole we are of opinion that the defendant is not liable to plaintiff under this contract for any amount in excess of $20,688.03 consisting of $13,688.03 allowed for the airplane delivered, and $7,000 for changes ordered in writing which involved an additional cost to plaintiff with respect to which no- amount was agreed upon by the parties.
Judgment will therefore be entered for plaintiff under this contract for $20,688.03. The amount of $13,688.03 was duly allowed by legal authority and voucher issued therefor, but payment was withheld by the Comptroller General. The plaintiff is therefore entitled to interest on this amount at 6 percent per annum under the act of March 3, 1875, from July 1, 1924, to March 3, 1933. The act of March 3, 1875, provided that “ when any final judgment recovered against the United States or other claim duly allowed by legal authority, shall be presented ” and the claimant shall be indebted to the United States in any manner, payment shall be withheld of an amount of such judgment or claim equal to the debt thus due to the United States, and that if it shall be finally determined that the plaintiff is not indebted to the United States, the amount so withheld shall be paid over to the claimant with 6 percent interest thereon for the time it has been withheld. Standard Dredging Co. v. United States, 71 C.Cls. 218.
Section 13 of the Treasury & Post Office Appropriation Act, approved March 3, 1933, amended the act of March 3, 1875, U.S. Code, title 31, section 227, to read, so far as material here, “that when any final judgment recovered against the United States duly allowed by legal authority ■shall be presented to the Comptroller General of the United States for payment, and the plaintiff therein shall be indebted to the United States in any manner, whether as principal or surety, it shall be the duty of the Comptroller *343 General of the United States to withhold payment of an amount of such judgment equal to the debt thus due to the United States; * * This section further provided that if such plaintiff denies his indebtedness to the United States, or refuses to consent to the set-off, then the Comptroller General shall withhold payment of such further amount of such judgment as in his opinion would be sufficient to cover all legal charges, and costs in prosecuting the debt of the United States to final judgment; and if in such action judgment shall be rendered against the United States, or the amount recovered for debt and costs shall be less than the amount so withheld, the balance shall then be paid over to such plaintiff with 6 per centum interest thereon for the time it has been withheld.
From the foregoing it will be seen that the act of March 3,1875, as amended, authorizes the payment of interest only with respect to the withholding of a final judgment recovered against the United States and does not authorize the allowance of interest upon the withholding of a claim duly allowed by legal authority, but the amendment was effective only from the date of its enactment and the plaintiff herein is entitled to interest during the period prior to the date on which the act of March 3, 1875, was amended. Judgment will therefore be entered in favor of plaintiff for $70,233.08 with interest on $13,688.03, as above stated. It is so ordered.
Whalet, Judge; Williams, Judge; and GeeeN, Judge; concur.
Booth, Chief Justice, took no part in the decision of this case on account of illness.