Littleton, Judge,
delivered the opinion of the court:
If plaintiff is entitled to recover interest on the amounts, due it and allowed by legal authority and withheld by the Comptroller General, the amount due it is $35,821.78. Whitbeck, Receiver of L-W-F Engineering Co., Inc., v. United States, 77 C. Cls. 309; Chicago, Indianapolis & Louisville-Railway Co. a Corporation, v. United States, 78 C. Cls. 96. (Certiorari denied, 290 U. S. 671, in each case.) Plaintiff contends, however, that these decisions did not correctly interpret and apply the Act of March 3, 1875, after it was amended March 3, 1933, and insists that the act as it stood before the amendment continued after amendment to require the payment of interest at 6 percent until payment of any sum allowed by legal authority and withheld prior to the amendment and continued to be withheld thereafter. The amount of such interest subsequent to March 3, 1933, on amounts due plaintiff and allowed by legal authority prior thereto (during the period such amounts were withheld after March 3,1933), is $13,627.53.
*254 On the other hand counsel for defendant renews the contention long ago made and denied by this court, that the original Act of March 3, 1875, prior to the amendment thereof on March 3, 1933, did not authorize the allowance and payment of interest on any sum due to a claimant from the United States, unless and until that claim had been reduced to judgment and thereafter withheld. The defendant nest renews the contention made and denied in Whitbeck v. United States supra, and Chicago, I. & L. Ry. Co. v. United States, supra, that the Act of March 3, 1933, amending the Act of March 3, 1875, extinguished all claims and right to interest on amounts due the claimant and allowed by legal authority and withheld prior to March 3, 1933, as offsets against claims ■of the Government against the claimant. Finally, the defendant says that if plaintiff is entitled to recover any interest under the Act of 1875 no interest was payable or recoverable after March 3,1933, on amounts theretofore allowed and withheld.
In the circumstances of this case, we do not find it necessary to re-examine the first contention made by plaintiff or the first and second contentions made by the defendant for the reason that we are of opinion that plaintiff is not entitled under the facts disclosed by the record to recover any interest under the Act of March 3,1875, either before or after that act was amended on March 3, 1933. Plaintiff denied any indebtedness to the United States in respect of the computation and determination made by the Interstate Commerce Commission under section 15a (6) of the Transportation Act of 1920 and did not consent to the set-off by the Comptroller General of amounts otherwise due and determined to be due plaintiff by the United States. The last portion of the Act of March 3, 1875 (18 Stat. 481), as amended, pertinent to this phase of plaintiff’s claim (the words in brackets were in the original act but were excluded in the amendment of March 3, 1933) provided as follows:
But if such plaintiff [or claimant] denies his indebtedness to the United States, or refuses to consent to the set-off, then the Comptroller General of the United States shall withhold payment of such further amount of such judgment [or claim], as in his opinion will be sufficient *255 to cover all legal charges and costs in prosecuting the debt of the United States to final judgment. And if such debt is not already in suit, it shall be the duty of the Comptroller General of the United States to cause legal proceedings to be immediately commenced to enforce the same, and to cause the same to be prosecuted to final judgment with all reasonable dispatch. And if in such action judgment shall be rendered against the United States, or the amount recovered for debt and costs shall be less than the amount so withheld as before provided, the balance shall then be paid over to such plaintiff by such Comptroller General of the United States with 6 per centum interest thereon for the time it has been withheld from the plaintiff.
The facts show without dispute that no judgment was ever rendered with reference to whether or not the amount of $696,705.68 determined by the Interstate Commerce Commission (170 I. C. C. 451) was due by plaintiff to the United States. Suit had been instituted by the United States against plaintiff in the Supreme Court of the District of Columbia to recover this amount but no hearing thereon was had up to the time that Congress, on June 16, 1933, amended section 15a of the Act of February 28, 1920, and repealed section 6 thereof, and enacted section 206 (a) as follows:
All moneys which were recoverable by and payable to the Interstate Commerce Commission, under paragraph (6) of section 15a of this chapter, as in force prior to June 16, 1933, shall cease to' be so recoverable and payable; and all proceedings pending for the recovery of any such moneys shall be terminated. The general railroad contingent fund established under such section shall be liquidated and the Secretary of the Treasury shall distribute the moneys in such fund among the carriers which have made payments under such section, so that each such carrier shall receive an amount bearing the same ratio to the total amount in such fund that the total of amounts paid under such section by such carrier bears to the total of amounts paid under such section by all carriers; except that if the total amount in such fund exceeds the total of amounts paid under such section by all carriers such excess shall be distributed among such carriers upon the basis of the average rate of earnings (as determined by the Secretary of the Treasury) on the investment of the moneys in such fund and differences in dates of payments by such carriers.
*256 The provisions of paragraph 6 of section 15a of the Interstate Commerce Act of February 28, 1920, 41 Stat. 488, were as follows:
If, under the provisions of this section, any carrier receives for any year a net railway operating income in excess of 6 per centum of the value of the railway property held for and used by it in the service of transportation, one-half of such excess shall be placed in a reserve fund established and maintained by such carrier, and the remaining one-half thereof shall, within the first four months following the close of the period for which such computation is made, be recoverable by and paid to the Commission for the purpose of establishing and maintaining a general railroad contingent fund as hereinafter described. For the purposes of this paragraph the value of the railway property and the net railway operating income of a group of carriers, which the Commission finds are under common control and management and are operated as a single system, shall be computed for the system as a whole irrespective of the separate ownership and accounting returns of the various parts of such system. In the case of any carrier which has accepted the provisions of section 209 of this amend-atory Act the provisions of this paragraph shall not be applicable to the income for any period prior to September 1, 1920. The value of such railway property shall be determined by the Commission in the manner provided in paragraph (4).
The quoted provisions of section 206 (a) and other changes made in section 15a of the Act of 1920 by the Emergency Railroad Transportation Act of 1938, 48 Stat. 211, are dis-cusséd and explained in Report No. 193, 73d Congress, 1st Session, of the Committee on Interstate and Foreign Commerce of the House of Representatives, at pp. 27-30. The Committee said in part, p. 28,
By this bill it is proposed to strike out the whole of section 15a and substitute therefor what may be termed a rule of rate making, indicating certain factors which, among others, the Commission, in the exercise of its power to prescribe just and reasonable rates, must take into consideration.
The bill provides (sec. 206) for the return to carriers of amounts which they have heretofore paid to the Commission under the provisions of section 15a. Such *257 amounts, placed in the railroad contingent fund, have been invested in obligations of the United States, in ac- ' cordance with the provisions of section 15a. It is expected that, upon liquidation of the fund, amounts earned will bring the fund up to a point where it is in excess of the total amounts paid in by carriers, and the provisions of section 206 of the bill are so written as to provide for distribution among the carriers of the earnings of the fund, making allowance for the differences in periods of time that payments of different carriers have been in the fund.
And further, at p. 29:
This section 15a is a unique provision in the public regulation of railroads and utilities in this country. When the Transportation Act was drawn in 1920 this proposal did not come from the Interstate Commerce Commission, nor from the railroads, nor from the shippers, but appears to have originated with some group which was apparently dominated by a single individual who was interested in trying to stabilize the price for railroad securities. The Committee on Interstate and Foreign Commerce in 1919 condemned such a provision as 15a. * * *
The experience of the past 12 years bears out the correctness of the position taken by the committee in 1919. The rule has been disappointing to the security owners who thought they would profit from it. The shippers have never favored it, and the Interstate Commerce Commission has consistently and earnestly recommended its repeal.
See also Eeport No. 87, 73d Congress, 1st Session, of the •Committee on Interstate Commerce of the Senate, May 15, 1983, pp. 11 and 12.
From the foregoing it is clear that there has never been a determination by judgment or otherwise that plaintiff was not in fact or in law indebted to the United States in whole or in part for the amount of $696,705.68 under section 15a (6) of the Interstate Commerce Act of 1920, supra. The decision by Congress in the Emergency Eailroad Transportation Act of June 16, 1933, to amend section 15a, and repeal subsection (6) thereof, and direct that all moneys which were recoverable by and payable to the Interstate Commerce Commission under paragraph (6) of the original *258 section 15a as in force prior to June 16,1933, should cease to be so recoverable and payable, and that all proceedings pending for the recovery of any such moneys should be terminated, was not a judgment against the United States within the meaning of the Act of March 3, 1875, that plaintiff was not,, up to that time, indebted to the United States under section 15a (6) of the Act of 1920.
The termination of the right to collect amounts due under the prior statute of 1920 in all proceedings for that purpose pending was a matter of policy. Had paragraph (6) of section 15a been simply repealed, plaintiff’s liability thereunder prior to the repeal would not have been affected in view of the provisions of section 13 of the Revised Statutes, U. S. Code, Title I, section 29, that the repeal of any statute shall not have the effect to release or extinguish any liability incurred under such act unless the repealing act shall so expressly provide, and that such statute shall be-treated as still remaining in force for the purpose of sustaining any proper action for the enforcement of such liability. The language of section 206 (a) of the Act of June 16, 1933, shows that in its enactment Congress was proceeding on the-theory that unpaid amounts which had theretofore been determined by the Interstate Commerce Commission under the 1920 Act were due or recoverable in whole or in part, rather than that no indebtedness to the United States existed in respect thereof.
After enactment of sections 205 and 206 of the Emergency Railroad Transportation Act of June 16, 1933, the Government on June 27 filed a motion in the pending suit against plaintiff to dismiss the suit under section 206 (a) of the 1938' Act. The motion was allowed and the suit was dismissed by the court on the same day.
Inasmuch as there does not exist in this suit one of the conditions upon which the United States consented to pay interest or to become liable therefor on amounts withheld under the Act of March 3,1875, to wit, a judgment against the United States in respect of the claimed indebtedness due the United States or its equivalent, an admission that the-plaintiff was not indebted to the United States during the *259 period of withholding, no interest is payable or recoverable by plaintiff under the Act of 1875.
The common-law rule that delay or default in payment,, (upon which, in the absence of an express agreement, the right to recover interest rests), cannot be attributed to the sovereign has been adopted by the Congress. United States v. North American Transportation Trading Company, 253. U. S. 330. Interest is not to be awarded against a sovereign government unless its consent has been manifested by an act of its legislature or by a lawful contract of its executive officers. United States v. North Carolina, 136 U. S. 210. The right to claim and recover interest from the United States is purely a matter of grace and all the stipulated conditions upon which the United States has agreed to pay the interest, or become liable therefor, must be strictly met. Tillson v. United States, 100 U. S. 43, 47; Harvey v. United States, 113 U. S. 243; U. S. ex rel Angarica v. Bayard, 127 U. S. 251; Cherokee Nation v. United States, 270 U. S. 476; section 177, Judicial Code, U. S. Code Title 28, section 284. Hind v. United States, 70 C. Cls. 288, 293.
The fact that plaintiff denied liability for the whole or any part of the amount determined by the Interstate Commerce Commission to be due and protested the withholding-by the Comptroller General of amounts otherwise admittedly due plaintiff and the applying of same as an offset against the alleged indebtedness to the Government is not alone sufficient to entitle plaintiff to interest under the Act of 1875. Nor is it of any controlling importance that plaintiff instituted a suit against the Comptroller General for a permanent injunction restraining him from withholding certain moneys due the plaintiff and applying same to the payment of an amount alleged to be due by plaintiff to the Interstate Commerce Commission, and obtained a favorable decision in such suit in the Court of Appeals for the District of Columbia November 21, 1932 (62 Fed. (2nd) 203). The question whether plaintiff was indebted to the United States, as claimed, was not considered or decided by the court. At the time the appeal was taken the United States had not instituted suit against plaintiff to recover the alleged indebted *260 ness. Tbe court held in substance that the determination ■of the Interstate Commerce Commission that plaintiff was indebted to the United States was administrative and not judicial; that neither in the act under which the determination was made, nor in any section thereof, was the Commission empowered to make a finding of this nature conclusive against the carrier; that it was without the power of a court to enter a judgment; that “The legal effect of the order therefore is no more than a bookkeeping ascertainment by the Commission of an indebtedness due by the carrier. To give it finality it was necessary it should be reduced to judgment.” The court further said:
Here, as we have seen, the services appellant rendered the United States are admitted. The amount due therefor is not contested, and so we have a case in which the United States owe appellant money which the Comptroller General refuses to pay because of an unsettled and unliquidated claim of the United States against appellant. This may not be done. There is, however, a statute of the United States which provides a right and a remedy. It authorizes the United States to withhold payment in any case in which an allowed claim is presented to the Treasury for payment (and appellant’s is such a claim) where the United States has a counterclaim, until suit can be instituted on the counterclaim and pressed to final judgment. Act Mch. 3, 1875, c. 149, 18 Stat. 481; Tit. 31 U. S. C. A., sec. 227. This statute, we think, was the chart which should have guided the Comptroller General in the procedure to be taken in this case, for otherwise we should have to concede to that officer the power of determining and settling an indebtedness of a citizen of the United States without trial, the examination of witnesses, or the other safeguards of judge and jury which in our system of government are guaranteed. Had the United States in the first instance availed themselves of the right and remedy provided by the statute, the delay of a year which has resulted would have, been avoided, and the rights of the parties as between themselves would likely have been settled without further recourse to the courts.
Following this the court referred to the contention of the Comptroller General that there was no obligation on the United States to press the order of the Commission to judgment but a duty on the railroad, if dissatisfied with the order *261 of the Interstate Commerce Commission, to resort to a three-judge court in an effort to have it set aside, or to the Court of Claims to recover judgment against the United States for the withheld amount of indebtedness of the United States to the Railroad Company. The court said r
We are not impressed with this position in either respect. That resort by appellant to a three-judge court was open to it to question an order solely to pay money, even if conceded, which is going a long way, is not conclusive, for, the order of the commission not being self-executing, appellant was under no legal obligation to have it reviewed until it was sought to enforce it, and this we think required something more than the order itself. Appellant was asking nothing more than the payment of an admitted debt. Appellee sought to avoid payment on the ground of indebtedness to the United States. The duty of establishing the counterclaim and the legality of the set-off was therefore, in the circumstances, an obligation not of appellant but of the United States.
In conclusion the court held that at the original hearing in the trial court that court should have required the Comptroller General to elect whether he would institute suit to reduce the determination of the Interstate Commerce Commission to judgment, as required by the Act of 1815, or suffer the injunction to issue, and, in this connection, the court said:
The purpose of the suit was not to challenge the discretion of the Comptroller General but rather to challenge his authority to withhold a sum of money admitted to be due and payable. In such a case it is not necessary to join the United States. But as we have already seen, since the appeal was taken, the United States and the commission, as parties plaintiff, have instituted a suit to make effective the order of the commission finding the appellant chargeable with excess earnings and to secure judgment for the amount thereof. In these circumstances, we think we should have regard to the condition as we find it now, and that no injunction should issue pending the determination of the proceeding, which as we have seen, has now been duly begun under the provisions of the statute.
In the circumstances the Court of Appeals affirmed the decision of the lower court denying the injunction with directions that if it should be found that the Comptroller General *262 •bad withheld moneys otherwise due the railroad in excess of the claimed indebtedness to the United States, such excess should be ordered paid to plaintiff at once.
Before the suit by the United States against plaintiff was heard and decided by the District Court, the case was dismissed on motion of the plaintiff and the defendant, as here-inbefore stated, without any consideration of or decision by the court as to whether under section 15a (6) of the Act of February 28,1920, supra, plaintiff was or was not indebted to the United States prior to June 16,1933.
In these circumstances and for the reasons hereinbefore stated, the petition must be dismissed and it is so ordered.
MaddeN, Judge; JoNEs, Judge; and Whaley, Chief Justice, concur.
Whitakee, Judge, took no part in the decision of this case.