## THAYER–WEST POINT HOTEL CO. v. UNITED STATES.

No. 45874.

Court of Claims.

March 4, 1946.

Ernest J. Ellenwood, of New York City (John S. Shedden and Ellenwood & Shedden, all on the brief), for plaintiff.

Donald B. MacGuineas, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHALEY, Chief Justice.

Plaintiff, The Thayer-West Point Hotel Company, brings this suit against the defendant under the provision in a lease for just compensation to the lessee, or its assigns, for the construction of a hotel, its appurtenances and equipments, on the

United States Military Reservation at West Point, State of New York.

The lease was entered into pursuant to an Act of Congress approved March 30, 1920, 41 Stat. 538, 548, reading as follows:

"That the Secretary of War is hereby authorized to lease land on the United States Military Reservation at West Point, for a term of not exceeding fifty years, to any corporation, company, or individual, upon which to erect a hotel, and all other necessary buildings in connection therewith, in accordance with plans and specifications submitted to and recommended by the Superintendent of the Military Academy, and approved by the Secretary of War. Said lease shall contain such conditions, terms, reservations and covenants, as may be agreed upon and shall also provide for just compensation to the lessees for the construction of said hotel, appurtenances, and equipments, to be paid to said lessees at the termination of said lease."

The plaintiff lays claim to "the total cost for the construction of the hotel, including appurtenances and equipment, together with all expenses properly attributable thereto," in the sum of approximately $1,932,000.

Pursuant to the Act of March 30, 1920, the Secretary of War leased to Herbert Williams October 17, 1924, a tract of land within the military reservation, consonant with the expressed purpose of the Act. Certain provisions of this lease have a more or less direct bearing upon the claim here made by the plaintiff.

The lessee covenanted to build upon the reservation a hotel substantially in accordance with Government plans, and to keep it open continuously except at specially permitted times, title to the hotel to be in the lessee until termination of the lease when it should pass forthwith to the Government. Upon failure of the lessee to observe the covenants of the lease, the Secretary of War might annul the lease, and, as the lease worded it, "thereupon just compensation shall be made to the party of the second part [lessee], or his assigns, for the construction of said hotel, appurtenances and equipments."

The lessee was not given free rein as to return on his investment. The lease provided that the lessee "shall, from time to time, establish standard rates for rooms and meals in said hotel, which rates shall be subject to the approval of the Superintendent of the Military Academy for the time being, and the following persons shall be entitled to a discount from said rates of twenty-five percent (25%) upon production of a card signed by the Adjutant of the Post or such other officer as may be designated by the Superintendent representing the bearer to be entitled thereto as follows:

"(a) The Board of Visitors to the United States Military Academy and officers of the United States Government making tours of inspection at the Post.

"(b) Parents and guardians of cadets.

"(c) Officers of the United States Army on duty at the Post and their dependents when other quarters are not available.

"(d) Officers and their dependents not under War department orders for such duty, but officially connected with athletic teams as coaches or trainers. There shall be no discrimination in the quality of service, meals or otherwise, against these classes as compared with other guests.

"The total number of rooms in said hotel which shall be subject to such discount shall not at any one time exceed one hundred rooms."

As finally constructed, the hotel had approximately 225 guest rooms.

The lessee, being the party of the second part, further covenanted as follows:

"That the party of the second part will keep said premises, the hotel, appurtenances and equipments in good repair at all times and that, at the expiration of said term or upon cancellation or annulment of the lease as herein provided, he will quit and surrender said property in as good state and condition as reasonable wear and tear thereof will permit; * * *."

Herbert Williams, being permitted to do so by the terms of the lease, formed a corporation, The Thayer-West Point Hotel Corporation, and on March 24, 1925, assigned the lease thereto. This corporation constructed the hotel.

The corporation issued first mortgage bonds in the principal sum of $1,000,000 secured by a trust deed to the American Trust Company and Charles H. Trismen, as trustees, conveying the lease and prospective building in trust. Proceeds of the bond issue were used to finance construction of the hotel. A second trust mortgage was entered into by the corporation on or about April 1, 1927, with the American Trust Company, covering the same properties, in the principal amount of $500,000.

The corporation operated the hotel for a time but in August of 1927 went into bankruptcy. The property, however, was not administered by the trustee in bankruptcy due to foreclosure proceedings instituted by the trustees, American Trust Company and Charles H. Trismen, wherein judgment was rendered and a sale decreed.

A committee was formed, representing certain of the bondholders, which bid in the property at the foreclosure sale, at $25,000, and a deficiency judgment was entered against the defaulting corporation in the sum of $1,235,067.67.

The bondholders' committee formed a new corporation, The Thayer-West Point Hotel Company, the plaintiff herein, according to a plan by which the committee assigned to the plaintiff its purchased rights and equipment, and the plaintiff issued income bonds and common stock. The bondholders of the original corporation, participating in the plan, exchanged their bonds at $100 face value of surrendered bonds to $50 face value of the new bonds, receiving in addition shares of common stock in proportion to the amount of bonds surrendered.

The holders of the first mortgage bonds of the original corporation who did not join in the plan of reorganization, holding $120,000 face value, received their proportionate distributive share of the proceeds of the $25,000 paid at the foreclosure sale.

Out of the original bond issue of $1,000,000 by the old corporation, bonds to the extent of $879,400 face value were surrendered in return for $439,700 face value of the new bonds and 8,794 shares of no-par value common stock.

These new bonds and the common stock are now outstanding.

In addition the plaintiff on December 27, 1930, issued its bond in the sum of $125,000, secured by first mortgage on the hotel property and leasehold, which is now outstanding in the principal amount of $115,000 with unpaid interest at six percent per annum from January 1, 1942.

In December of 1930, the referee in the foreclosure proceedings, the trustee in bankruptcy, the trustees of the first mortgage and of the second mortgage of the original corporation conveyed to the plaintiff all their several interests in the hotel and leasehold, and the Superintendent of the Academy gave his written approval of assignment of the lease to plaintiff.

This was the situation with respect to ownership of the hotel at the end of 1930. The original corporation had outfitted the hotel at some expense about May 21, 1926, giving to the vendor of the furniture and equipment notes secured by chattel mortgage. The original corporation defaulted on the notes, the chattel mortgage was foreclosed, but the mortgagee left the furniture and equipment in the hotel under a rental agreement. This rental agreement was continued with the plaintiff when the plaintiff took possession at the beginning of 1931, but the plaintiff purchased the furniture and equipment outright February 19, 1931.

Beginning January 1, 1931, and ending March 10, 1943, the plaintiff operated the hotel under the terms of the lease.

Correspondence, beginning January 5, 1943, and ending May 21, 1943, is described in the findings. It appears thereby that the plaintiff ceased operation of the hotel March 10, 1943, that the defendant annulled the lease and took over the property, certain stipulations as to notice, etc., being waived.

Suit is now here to recover compensation for the construction of the hotel, its appurtenances and equipment.

The lease provided that, under the circumstances here described, "just compensation shall [thereupon] be made to the party of the second part [lessee], or his assigns, for the construction of said hotel, appurtenances and equipments."

This lease was entered into October 17, 1924; the hotel was completed in September 1926.

 The statute under which the lease was made provided that just compensation should be paid at the termination of the lease.

The original construction costs were not made a matter of record between the parties, as one might suppose would have been done if original cost was to be the basis of just compensation. The original books of entry showing construction costs have been destroyed. The original corporation came into existence solely for the purpose of carrying into effect the terms of the lease, its whole existence was bound up in the lease. It appears to have had no other business than that contemplated by the lease. The lease was its lifeblood.

The testimony is to the effect that the books of account were destroyed by the

attorneys for the trustee in bankruptcy, who, curiously enough, did not, because of the foreclosure proceedings, administer the property at all. The books were destroyed February 25, 1938, while the plaintiff was operating the hotel. The excuse is that the rules of the bankruptcy court permitted such destruction, but that is not saying it had to be done.

The evidence surviving as to actual original costs is in general too fragmentary, indefinite, and otherwise unreliable to warrant definite findings with regard thereto. The amounts found are therefore approximate only.

There are other sources which may be made use of in fixing upon just compensation. "Just compensation" has definition that relates it to a taking. Here there was no taking in the legal sense. The contract provided that title and possession should pass from lessee to lessor immediately upon termination of the lease. Title did pass, and an agreed entry was made. The plaintiff ceased operation March 10, 1943. Although there was no "taking," the parties use this date for the purpose of offering values other than those at time of original construction of the hotel, and we use it as the date of the "taking" for fixing "just compensation."

There was no market to which resort might be had for adjudging value of the hotel building. The plaintiff owned the building, the Government owned the land on which the building rested, and the building formed part of the realty. Assuming that market value could be determined for the realty (it was a Government military reservation), there would be the problem of dividing such value between building and land.

The Act of Congress says that the lease shall provide for just compensation, to be paid at termination. The amount of just compensation was not fixed by the lease. Instead, the lease simply provided, without following the wording of the statute, that just compensation should be made and left the amount to be determined at a future time.

But neither in the Act nor in the lease is there any provision for just compensation for a taking. The compensation is to be for construction of the hotel. Cost is not mentioned.

There was perhaps good reason for not specifying the amount of just compensation in the original lease. The cost of construction had not been determined, if cost were to be a factor in arriving at just compensation. And if the original cost were to be recovered upon termination, there would be no need for the lessee, in fixing upon the charges to its guests, to provide for return of the original investment in addition to earnings on investment. Assurance that it would get back the original investment would take care of the question of retirement. Whether this situation, or some other situation, was considered by the Government in approving hotel rates, is a matter left in complete darkness. The fact that the lessee was paying no ground rent might also have influenced hotel rates.

Under these circumstances it seems apparent that just compensation was not to be necessarily original cost, and, as indicated, there appears to have been at no time an account stated between the parties covering original cost.

Just compensation therefore for the construction of this hotel is not subject to any nice calculation.

What amount constituted just compensation to the plaintiff March 10, 1943, for construction of the hotel and appurtenances? We have found it to be $820,682. In arriving at this amount there has been taken into consideration the history and circumstances recited in the findings of fact. The main reliance has been upon sound value, that is, reconstruction new less depreciation, bringing the hotel building and appurtenances to the condition they were in when transferred to Government title and possession March 10, 1943. This takes care of depreciation in excess of that due to reasonable wear and tear.

There was a market for the hotel equipment. The application of so-called "sound" value to the equipment need not be resorted to.

On the basis of all the facts relevant thereto, recited in the findings, just compensation for the equipment as of March 10, 1943, is found to be $47,000.

The total of just compensation to the plaintiff for construction of the hotel, its appurtenances, and equipments, is therefore $867,682, as of March 10, 1943.

■ There remains the question of additional allowance to make compensation a just one as of the date of payment.

The suit here is on a contract and not for compensation under the Fifth Amend-

ment. Section 177 of the Judicial Code, 28 U.S.C.A. § 284, prohibits this Court from allowing interest "unless upon a contract expressly stipulating for the payment of interest." But the Supreme Court has held that interest, so-called, necessary to build compensation up to a point where it can be considered just as of the date of payment, is not interest within the meaning of Section 177 of the Judicial Code. Phelps v. United States, 274 U.S. 341, 344, 47 S.Ct. 611, 71 L.Ed. 1083.

Both statute and contract expressly provide for the payment of "just compensation." The compensation payable must be no less just than that payable under the Fifth Amendment. There is no plausible distinction.

The rate of four percent per annum from March 10, 1943, down to the date of payment, will be applied to and added to the sum of $867,682 and included in the judgment herein.

The plaintiff is entitled to recover accordingly, and it is so ordered.

JONES and LITTLETON, Judges, concur.

WHITAKER, Judge (dissenting).

I dissent. I think $500,000 would be liberal compensation.

MADDEN, Judge, took no part in the decision of this case.