TILLSON *v.* UNITED STATES.

Where the claim of a party for loss and damage growing out of the alleged failure of the United States to perform its contracts with him, as to time and manner of payment, is, by a special act of Congress, referred to the Court of Claims, "to investigate the same, and to ascertain, determine, and adjudge the amount equitably due, if any, for such loss and damage," — *Held*, that the rules of law applicable to the adjudication of claims by that court in the exercise of its general jurisdiction must govern, and that interest, not having been stipulated for in the contracts, cannot be allowed thereon.

APPEAL from the Court of Claims.

This was a suit brought by Robert Tillson & Co. against the United States.

The Court of Claims found the following facts: —

"I. The claimants and the defendants entered into the various contracts and agreements set forth in the petition.

"II. The claimants, at various times between the 9th of October, 1862, and the 24th of October, 1864, delivered horse equipments and infantry accoutrements, under said contracts and agreements, to the defendants' officers at the United States arsenal in St. Louis, to the amount of $494,972.66.

"III. There were one hundred and fifteen distinct deliveries of the above-described goods made by the claimants, extending from the 9th of October, 1862, to the 24th of October, 1864; and the goods delivered were then, at the respective times of delivery, inspected and approved by the defendants' officers, and bills therefor were duly authenticated by the proper officers of the Ordnance Department, as provided by the contract, and no negligence or delay is attributable to the officers of the Ordnance Department in regard to the inspection of the goods or the issuing of the vouchers. The vouchers so received by the claimants were by them presented to the Ordnance Office in Washington, and were by the Ordnance Office transmitted to the treasury, to be audited and paid, and no delay in so transmitting them is attributable to the Ordnance Office. After the vouchers reached the Treasury Department, intervals of different length occurred before they were audited and drafts issued in payment thereof. The shortest interval between the receipt of a voucher by the Treasury Department and the issuing of the draft in payment was seven days, and the longest was one hundred and fourteen days; the average was thirty-six days. During the period of the fulfilment of their contracts and agreements, before described, the claimants' business necessities compelled them to borrow money by hypothecating or selling their vouchers, and the rate of discount paid by them generally was ten per cent per annum.

"IV. A portion of the payments made to the claimants upon the vouchers before described were made, to the extent of twenty-five per cent thereof, by certificates of indebtedness issued under the act of 1st March, 1862. 12 Stat. 352. These certificates were sent by mail to the claimants, accompanied by ordinary treasury drafts for the remaining seventy-five per cent of the payments. The claimants neither solicited such

certificates nor objected to them. Being below par in the market, the claimants sold them at a discount of seven and a half per cent. The total amount of the certificates so issued to them was $77,000, and the discount or loss suffered by the claimants in disposing of them for cash was $5,775."

Upon the foregoing facts that court decided as conclusions of law, —

"1. The loss and damage suffered by the claimants from the failure to keep and perform the contracts referred to in the findings aforesaid, as to the time and manner of payment thereof, were too remote to be a subject of recovery in this action, within the meaning and intent of the private act for the relief of the claimants, passed June 23, 1874.

"2. The claimants, by voluntarily accepting certificates of indebtedness in part payment of their demands, are concluded from saying that such payments were in violation of the terms of their contracts with the government.

"3. In contracting with the government, the claimants submitted themselves to the regular routine of public business, and are not entitled to recover damages for the delays which occurred in auditing their vouchers in the Treasury Department."

The court rendered judgment dismissing the petition of the plaintiffs, and they appealed.

The act of June 23, 1874, referred to by the Court of Claims, under which this suit was brought, is as follows: —

"An Act for the relief of Robert Tillson & Company, Quincy, Illinois:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that the claim of Robert Tillson and Company, of Quincy, Illinois, for loss and damage growing out of the failure of the government of the United States to keep and perform the contract or contracts, as to time and manner of payment, under which certain horse equipments and infantry accoutrements were manufactured between the months of September, 1862, and July, 1864, by said Tillson and Company, for said government, be and the same is hereby referred to the Court of Claims, and such court is authorized and directed to investigate the same, and to ascertain, determine, and adjudge the amount equitably due said firm, if any, for such loss and damage."

*Mr. Matt. H. Carpenter* and *Mr. Benjamin F. Grafton* for the appellants.

*The Solicitor-General, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

We have no doubt it was the wish of those who procured the passage of the special statute under which the Court of Claims took jurisdiction of this suit, to obtain from Congress authority for that court to give a judgment against the United States at least for interest, in case it should be found that payments on the contracts held by the claimants had been unreasonably delayed. But if Congress had desired to grant such authority, it would have been easy to have said so in express terms ; and because it did not say so, we are led irresistibly to the conclusion that it did not intend to give any such power. By the statute, the court was required to investigate the claim, and " ascertain, determine, and adjudge the amount equitably due such firm, if any, for such loss or damage." There is nowhere any intimation that the investigation is to be conducted otherwise than judicially. The reference was made to the court as a court, and not to the judges as arbitrators. The determination is to be made according to the fixed rules which govern that court in the adjudication of causes, and not at the discretion of the judges. The same principles of jurisprudence and the same statutory regulations as to practice are to be applied here that would be if the case had come into the court under its general jurisdiction. It is to be ascertained and determined what, if any thing, is due the claimants from the government, according to the rules of law applicable to the settlement in that court of controversies between the government and its citizens. The special statute does not even provide that the adjustment shall be made upon principles applicable to suits between citizens. To our minds the word " equitably," as here used, means no more than that the rules of law applicable to the case shall be construed liberally in favor of the claimants.

As between citizens, no allowance could be made for loss of profits consequent on the advance in the price of materials

while payments were withheld, nor for the discount on the certificates of indebtedness sold in the market. Such damages are too remote. Interest, however, would have been recoverable as against a citizen, if the payments were unreasonably delayed. But with the government the rule is different, for in addition to the practice which has long prevailed in the departments of not allowing interest on claims presented, except it is in some way specially provided for, the statute under which the Court of Claims is organized expressly declares " that no interest shall be allowed on any claim up to the time of the rendition of judgment thereon in the Court of Claims, unless upon a contract expressly stipulating for interest." Rev. Stat., sect. 1091. This is conclusive. No interest was stipulated for in this contract, and the prohibition against its allowance has not been removed in favor of the claimants.

*Judgment affirmed.*