UNITED STATES *v.* THAYER-WEST POINT
HOTEL CO.

No. 106.   Argued December 20, 1946.—Decided January 20, 1947.

*Oscar H. Davis* argued the cause for the United States. With him on the brief were *Acting Solicitor General Washington, Assistant Attorney General Sonnett, Paul A. Sweeney* and *John R. Benney.*

*Ernest J. Ellenwood* argued the cause for respondent. With him on the brief was *John S. Shedden.*

MR. JUSTICE MURPHY delivered the opinion of the Court.

The decision here turns upon the power of the Court of Claims, in light of § 177 (a) of the Judicial Code,[1] to include interest in its award of "just compensation" to a lessee for the construction of a hotel and other buildings pursuant to the provisions of the Act of March 30, 1920.[2]

The Act of March 30, 1920, authorizes the Secretary of War to lease land on the United States Military Reservation at West Point, N. Y., to any person for a term not exceeding 50 years upon which to erect a hotel and other necessary buildings in connection therewith. The lease is to contain such conditions, terms, reservations and covenants as may be agreed upon and is to provide "for just compensation to the lessees for the construction of said hotel, appurtenances, and equipments, to be paid to said lessees at the termination of said lease."

On October 17, 1924, the Secretary of War duly made a lease under this Act to one Williams for a period of 50 years. The lease provided, among other things, that it might be canceled at any time by the Secretary if the lessee should fail to observe all the covenants and conditions in the lease. One of the covenants was that the lessee was to "keep the said hotel open for business every day during the continuance of this lease, except at such times as permission to close may be given in writing by the Superintendent, U. S. M. A." Upon a cancellation of the lease, "just compensation" was to be paid to the lessee for the construction of the hotel, appurtenances and equipment, and title thereto was to pass at once to the United States.

___

[1] 28 U. S. C. § 284 (a).

[2] 41 Stat. 538, 548.

Similar provisions were made in connection with the termination of the lease on the expiration of the 50-year term. The lease also set forth numerous restrictions and requirements as to the operation of the hotel—such restrictions and requirements being primarily for the benefit of the Military Academy.

The lease was assigned to a corporation and a hotel and other buildings were subsequently erected. Through a series of events which need not be detailed here, the respondent took over the leasehold and the hotel properties in 1930 with the approval of the Superintendent of the Military Academy. Respondent began operating the hotel on January 1, 1931, and continued under the terms of the lease until March 10, 1943.

On January 5, 1943, respondent wrote to the Secretary of War that conditions then existing made continued operation of the hotel impossible and that to avoid a curtailment of operations or a closing down of the hotel "the properties should be owned and operated by the Government." It was accordingly suggested that the Secretary declare the lease forfeited upon the closing of the hotel by respondent, a default contemplated by the lease. The Secretary agreed to this proposal. The respondent then gave notice of its intention to close the hotel on the morning of March 10, 1943. The agents of the Secretary immediately took over the possession, management and operation of the hotel on March 10 and shortly thereafter the Secretary declared the lease annulled.

The parties were unable to agree on the amount of "just compensation" due under the lease. Respondent then brought this suit in the Court of Claims, praying for a judgment in the sum of $1,932,000. That court found that the "total of just compensation to the plaintiff for construction of the hotel, its appurtenances, and equipments, is therefore $867,682, as of March 10, 1943." 106

Ct. Cl. 60, 80, 64 F. Supp. 565, 568. The court then added interest at the rate of 4% per annum from March 10, 1943, to the date of payment as "additional allowance to make compensation a just one as of the date of payment." The sole question before us concerns the propriety of adding the 4% interest from March 10, 1943.

The pertinent part of § 177 (a) of the Judicial Code provides that "No interest shall be allowed on any claim up to the time of the rendition of judgment by the Court of Claims, unless upon a contract expressly stipulating for the payment of interest, . . ." Section 177 (a) thus embodies the traditional rule that interest cannot be recovered against the United States upon unpaid accounts or claims in the absence of an express provision to the contrary in a relevant statute or contract. *Tillson* v. *United States,* 100 U. S. 43, 47; *United States* v. *North American Co.,* 253 U. S. 330, 336; *United States* v. *Goltra,* 312 U. S. 203, 207. This rule is inapplicable, however, where the United States takes property under its power of eminent domain; in such cases it has consistently béen held that the Fifth Amendment's reference to "just compensation" entitles the property owner to receive interest from the date of the taking to the date of payment as a part of his just compensation. *Seaboard Air Line Ry.* v. *United States,* 261 U. S. 299, 306; *Brooks-Scanlon Corp.* v. *United States,* 265 U. S. 106, 123; *Phelps* v. *United States,* 274 U. S. 341, 344.

Since it is clear in the instant case that the United States did not exercise its power of eminent domain and that there was no taking of the hotel properties in the legal sense, we can put to one side the eminent domain situation. There is nothing more here than an ordinary contractual relationship between the United States and the respondent. That relationship was voluntarily entered into by respondent's predecessor and was severed at respondent's suggestion. The Government's liability to

pay for the construction of the hotel properties was fixed by the Act of March 30, 1920, and by the lease, not by the Constitution. The sole issue thus becomes whether there is any express provision in the Act or in the lease permitting the recovery of interest under the circumstances. Only if there is such a provision can respondent avoid the traditional rule set forth in § 177 (a).

Respondent's claim in this respect rests upon the references in the Act and in the lease to the payment of "just compensation" for the construction of the hotel, appurtenances and equipment. "Just compensation," it is said, is to be given the same meaning here as in the case of a taking under the power of eminent domain, thereby entitling respondent to the full value of the properties down to the date of payment. From this viewpoint, the Court of Claims could use interest at the rate of 4% as the measure of the value of the use of the hotel properties from the time when the Government took possession on March 10, 1943, to the time of payment and include such interest as a component part of just compensation. The conclusion is reached that the term "just compensation," as used in the Act and in the lease, constitutes an express provision for interest so that the bar of § 177 (a) is removed. We cannot agree.

The fact that "just compensation" includes interest in the eminent domain setting does not necessarily mean that the term must be given the same scope in other situations. *United States* v. *Goltra, supra.* It may or it may not imply an obligation to pay interest. For example, interest conceivably may not be contemplated where the term refers to compensatory damages for a tort or a breach of contract, or where it has reference to the price to be paid for the exchange or sale of property at a future date. Hence, in the absence of constitutional connotations, "just compensation" is not a term of art so far as interest is

concerned. The inclusion or exclusion of interest depends upon other contractual provisions, the intention of the parties and the circumstances surrounding the use of the term.

But in order to override the historical rule codified in § 177 (a), something more is necessary than an equivocal use of the term "just compensation." It is not enough that the term might be construed to include the payment of interest. As § 177 (a) itself indicates, there must be a provision in the contract "expressly stipulating for the payment of interest." That provision must be affirmative, clear-cut, unambiguous; and an unexpressed intention by the parties that the term "just compensation" be construed to include interest is insufficient. Likewise, where a statute is relied upon to overcome the force of § 177 (a), the intention of Congress to permit the recovery of interest must be expressly and specifically set forth in the statute. *Tillson* v. *United States, supra,* 46; *United States ex rel. Angarica* v. *Bayard,* 127 U. S. 251, 260. Mere use of the term "just compensation," without more, is no substitute for an express provision for interest.

Here neither the Act of March 30, 1920, nor the lease under which respondent operated contains an express provision for the payment of interest, either in addition to or as a part of the "just compensation" to be paid to respondent. If the United States had desired to provide by statute or to contract in the lease for the payment of interest, it would have been easy to have said so in express terms.[3] Because it did not say so, we are led irresistibly to the conclusion that it did not intend to negative the effect of § 177 (a) in this instance. *Tillson* v. *United States, supra.*

---

[3] Congress has expressly provided for the payment of interest in other instances. See Judicial Code, § 177 (b), 28 U. S. C. § 284 (b); Contract Settlement Act of 1944, 58 Stat. 649, 654, § 6 (f), 41 U. S. C., Supp. V, § 106 (f).

We therefore reverse the judgment of the Court of Claims to the extent that it includes an allowance for interest.