Davis, Judge,
delivered tbe opinion of the court:
In Confederated Salish and Kootenai Tribes v. United States, 167 Ct. Cl. 405 (1964), we held that plaintiffs should prevail on their claim (in paragraph 11 of the petition in this multiclaim suit) that the Government wrongfully used a large amount of their money to pay the expenses of surveying the reservation lands under the Act of April 23, 1904, 33 Stat. 302, which directed that these lands be surveyed into lots and the surveying costs paid out of the receipts of the sales of reservation land found to be surplus. We concluded that, under the Treaty of Hell Gate of July 16,1855,12 Stat. 975, the Government should have borne that expense itself, and that by debiting the funds available to the Indians the 1904 Act violated the treaty, “thus taking rights away from plaintiffs.” Plaintiffs’ motion for summary judgment on this claim was granted, and judgment was entered for them, with the amount of recovery to be determined under Rule 47(c)(2).
In the proceedings under Rule 47(c), it was agreed that the expenditures and disbursements charged against the receipts from the surplus tribal lands amounted to $190,399.97. The present controversy is whether the plaintiffs can also demand interest on that sum.[1] They say that the use of their money, as required by the 1904 Act, amounted to an eminent domain taking which entitled them, under the usual rule, to interest on the principal amount; alternatively, they claim a special statutory basis for interest in this case. The defendant denies both aspects of the demand. The trial commis *454 sioner rejected all interest and upheld the Government’s defense. Plaintiffs ask us to overturn that refusal.
For many decades Congress has forbidden interest on a plaintiff’s claim in this court unless a contract or a statute has “expressly” provided for interest. 28 U.'S.C. § 2516 (a). This rule has won strict adherence in many kinds of cases, including Indian claims. Tillson v. United States, 100 U.S. 43 (1879); United States v. North American Transp. Co., 253 U.S. 330, 336 (1920); United States v. Thayer-West Point Hotel Co., 329 U.S. 585 (1947); United States v. N.Y. Rayon Importing Co., 329 U.S. 654 (1947); United States v. Alcea Band of Tillamooks, 341 U.S. 48 (1951); Loyal Band of Creek Indians v. United States, 118 Ct. Cl. 373, 382-83, 97 F. Supp. 426, 431 (1951), cert. denied, 342 U.S. 813. Plaintiffs seek to come within the implied exception for a Fifth Amendment taking leading to the payment of “just compensation” (United States v. Thayer-West Point Hotel Co., supra, 329 U.S. at 588; United States v. Alcea Band of Tillamooks, supra, 341 U.S. at 49), but we agree with the trial commissioner that there was no taking here.
As stated in the petition,[2] plaintiffs’ claim avers the wrongful and unlawful appropriation, use, and expenditure of Indian money to pay for the survey, and asks for damages in the amount so used. There is no reference to the Fifth Amendment or to an eminent domain taking, nor is there a request for interest in addition to the amount so “appropriated, used and expended.” The original motion for summary judgment did not characterize the claim as for a Fifth Amendment taking or seek interest. Similarly, this court’s prior opinion did not hold that there had been a Fifth Amendment seizure of property. The gravamen of our ruling was that, by passing the 1904 Act, Congress violated the United States’ obligations and the plaintiffs’ rights under the *455 1855 treaty. This was a breach of an agreement — and the court’s reference to “thus taking rights away from plaintiffs” was directly connected with the holding that the treaty-agreement’s provisions had been broken. The taking away of contractual rights, via a rupture of the contract, is of course not equivalent to a taking of froferty under the Fifth Amendment. It is commonplace for the defendant to be held in this court for having gone back on a promise and thus denied a plaintiff bis rights. Interest is not paid on an award of that kind for a breach of contract. Choctaw Nation v. United States, 91 Ct. Cl. 320, 402-03 (1940), cert. denied, 312 U.S. 695 (1941) .[3] Such is the claim on which we entered judgment in 167 Ct. Cl. 405. As did the Supreme Court in Alcea Band of Tillamooks, supra, 341 U.S. at 49, we have looked to our former opinion to see whether it was grounded on a taking under the Fifth Amendment, and we find that it was not.
It is put to us, however, that the use of the plaintiffs’ own trust funds, as required by the 1904 Act, necessarily amounted to a Fifth Amendment taking of that property, i.e., the funds. Even on the technical level, the flaw in this argument is that legal title to the funds on deposit in the Treasury lay in the United States. See 25 U.S.C. § 161, discussed infra. The Indians’ interest was, at most, that of a beneficiary, and a trustee’s failure to live up to the standards imposed upon him is not a taking of title from the cestui but a breach of obligation. There is also a deeper objection. Money in the Federal treasury, even on deposit, cannot be simply equated with private property. Where such funds are involved it requires extraordinary circumstances, not *456 present here, to find an eminent domain taking in a withholding or use of the money by the Federal Government. If plaintiffs’ theory were correct, the label of “taking” would fortuitously be given to those deprivations in which the claimant could show some sort of title to funds in the treasury, while other claimants (with comparable demands) who are owed money by the Government but have been deprived of it would have to content themselves with the lesser remedy available to those who are merely creditors, grantees, obligees, contractors, or beneficiaries of the Government. If, for instance, Congress had happened to provide that the survey expenses were to be deducted from other moneys appropriated for plaintiffs’ purposes (rather than from the proceeds of the sale of surplus reservation lands) — see, e.g., 29 Stat. 357 (1896) — plaintiffs would not characterize that deduction as a taking of their property and yet the effect of the reduction in funds would be precisely the same. Mere form sometimes has meaning, but usually not where, as here, the choice of form seems haphazard and accidental. Considerations like, these have impelled courts to shy away, generally, from designating the withholding or diverting by the defendant of funds in the treasury as an eminent domain taking. Cf., e.g., United States v. N.Y. Rayon Importing Co., supra, 329 U.S. at 659 ff. (1947); Choctaw Nation v. United States, supra, 91 Ct. Cl. at 403; Acme Process Equipment Co. v. United States, 171 Ct. Cl. 324, 370, 347 F. 2d 509, 537 (1965). We see no reason to treat the present claim differently.
Plaintiff’s secondary point is that interest is authorized in this instance by statute. There is no interest provision in the jurisdictional act permitting the suit to be brought (Act of July 30,1946, 60 Stat. 715), but we are directed to the Act of April 1, 1880, 21 Stat. 70, 25 U.S.C. § 161, which calls upon the Secretary of the Interior to deposit in the treasury “all sums received on account of. sales of Indian trust lands” (among other funds) and declares that interest shall be paid on these deposits. This statutory obligation to pay interest, plaintiffs contend, is a sufficient predicate for an award of interest since the moneys diverted from the treasury by the *457 1904 Act would have borne interest if they had been allowed to remain undisturbed. We cannot accept this argument, appealing though it is, because the 1904 statute must be read as a pro tanto modification of the provisions of the 1880 Act requiring the deposit of “all sums received on account of sales of Indian trust lands” (emphasis added). When Congress said, in 1904, that the sale proceeds should be devoted to Indian purposes after deduction of the survey expenses,[4] Congress necessarily changed the prior requirement of the 1880 law and directed that interest not accrue on the amounts assignable to those costs. This was a Congressional change, not a mere executive or administrative order, and the 1880 provision could no longer be given full effect.
Plaintiffs’ motion to find them entitled to interest is denied, and the case is returned to the trial commissioner for further proceedings.

 Interest would add up, plaintiffs allege, to oyer $450,000 (besides tbe $190,000 principal sum).

 Paragraph 11, the only one pertaining to this particular claim, -was as follows: “The defendant wrongfully and unlawfully appropriated, used and expended several hundred thousand dollars of plaintiff’s funds to pay the expenses of survey, classification, appraisal and opening of the reservation lands pursuant to the Act of April 23, 1904 and amendments thereto, the exact amount of which is unknown to plaintiff and will be disclosed by the accounting herein prayed for. Plaintiff is entitled to Judgment for damages against defendant for said amount.”

 In Ohoetaw nation, a treaty required that five percent interest be paid on certain Choctaw trust funds; Congress thereafter reduced the interest to three percent. This court held the Choctaws entitled to the difference between interest at five percent as provided in the treaty and the three percent specified in the later act, but refused to allow interest on that amount (91 Ct. Cl. at 346-47, 402-03) : “Inasmuch, therefore, as plaintiff’s right to recover this amount grows out of a contract obligation of the government and results from its failure to fulfill its obligation in that regard, no additional amount measured by interest is allowable as a part of just compensation for a taking of property under the Fifth Amendment. Failure to pay the stipulated interest was not a taking of property under the Constitution.” See, also, Rogue River Tribe of Indians v. United States, 105 Ct. Cl. 495, 552-53, 64 F. Supp. 339, 344 (1946).

 Section 14 of tile 1904 Act provided (33 Stat. 305) : “SEC. 14. That the proceeds received from the sale of said lands in conformity with this Act shall be paid into the Treasury of the united States, and after deducting the expenses of the commission, of classification and sale of lands, and such other incidental expenses as shall have been necessarily incurred, and expenses of the survey of the lands, shall be expended or paid, as follows: One-half shall be expended from time to time by the Secretary of the Interior as he may deem advisable for the benefit of the said Indians and such persons having tribal rights on the reservation, including the Lower Pend d’Oreille or Kalispel thereon at the time that this Act shall take effect, in the construction of irrigation ditches, the purchase of stock cattle, farming implements, or other necessary articles to aid the Indians in farming and stock raising, and in the education and civilization of said Indians, and the remaining half to be paid to the said Indians and such persons having tribal rights on the reservation, including the Lower Pend d’Oreille or Kalispel thereon at the date of the proclamation provided for in section nine hereof, or expended on their account, as they may elect.”