A. Ernest **FITZGERALD**, Appellant,

v.

Elmer B. **STAATS** et al.

No. 77–1466.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 5, 1978.

Decided June 2, 1978.

---

John Bodner, Jr., Washington, D. C., with whom Richard W. Bowe, William Sollee and Ralph J. Temple, Washington, D. C., were on the brief, for appellant.

Rebecca L. Ross, Atty., Dept. of Justice, Washington, D. C., with whom Barbara Allen Babcock, Asst. Atty. Gen., Leonard Schaitman and Dennis G. Linder, Attys., Dept. of Justice, Washington, D. C., were on the brief, for appellees.

Before LUMBARD,* Senior Circuit Judge for the Second Circuit, and McGOWAN and MacKINNON, Circuit Judges.

Opinion for the Court filed by Circuit Judge LUMBARD.

LUMBARD, Circuit Judge **:

On January 5, 1970, A. Ernest Fitzgerald was removed from his position as Deputy Assistant Secretary for Management Systems in the Office of the Secretary of the Air Force. The reasons given were that the post had been abolished in a reduction-in-force, and that no other appropriate position was available. Fifteen days later, Fitzgerald began his struggle to persuade the Civil Service Commission that he had in fact been fired for having blown the whistle alerting Congress to a $2 billion overrun on the C5A transport,[1] and to be reinstated with backpay, costs and attorneys' fees.[2]

In this, the latest skirmish in his struggle, Fitzgerald is seeking from the government interest on the amount he would have earned during the period between his dismissal and his reinstatement, and on the amounts temporarily withheld from him after the Civil Service Commission had awarded backpay. The district court, Smith, J., found that both claims were barred, and granted a motion to dismiss. Despite our sympathy for Fitzgerald's position, we believe ourselves constrained to affirm.

I

On September 18, 1973, the Civil Service Commission's Appeals Examining Office found that the Air Force had, in fact, acted improperly in terminating Fitzgerald's employment, and ordered him reinstated.[3] This ruling brought into play the Back Pay Act, 5 U.S.C. § 5596;[4] in addition to rein-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

** The Honorable J. Edward Lumbard, Senior United States Circuit Judge, Second Circuit, sitting by designation.

1. See Federal Times, Jan. 31, 1977, at 1.

2. Part of the history of Fitzgerald's battle appears in our previous opinions in the matter: *Fitzgerald v. United States Civil Serv. Comm.*, 180 U.S.App.D.C. 327, 554 F.2d 1186 (1977) (denying attorneys' fees); *Fitzgerald v. Hampton*, 152 U.S.App.D.C. 1, 467 F.2d 755 (1972) (ordering that Civil Service Commission hearing be open to public).

3. As a veteran preference employee, *see* 5 U.S.C. §§ 7511–12 (1976), Fitzgerald was a beneficiary of the Veterans Preference Act, 5 U.S.C. § 7701 (1976), which reads in relevant part:

> A preference eligible employee as defined by section 7511 of this title is entitled to appeal to the Civil Service Commission from an adverse decision [including removal] of an administrative authority so acting. . . .

The Commission, after investigation and consideration of the evidence submitted, shall submit its findings and recommendations to the administrative authority and shall send copies of the findings and recommendations to the appellant or his representative. The administrative authority shall take the corrective action that the Commission finally recommends.

4. The Act reads in part:

> (b) An employee of an agency who, on the basis of an administrative determination or a timely appeal, is found by appropriate authori-

statement, Fitzgerald was entitled to all pay he would have received during his period of separation, less amounts earned through substitute employment during that period. The amount which Fitzgerald would have earned between January 5, 1970, and December 10, 1973, when he was restored to duty—that is, the gross amount of recovery under the Back Pay Act—was nearly $140,000.

A dispute arose between Fitzgerald and the Air Force as to how much had to be deducted from the gross recovery amount. The parties agreed that severance pay and similar payments received by Fitzgerald would reduce the recovery by some $15,000. Fitzgerald's employment as a management consultant and as an adviser to two congressional committees had generated income of some $50,000 that also, admittedly, had to be deducted. See Decision of the Comptroller General in File No. B–162578, 53 Comp.Gen. 824, 825 (1974). The dispute centered on the $47,975 that Fitzgerald had earned through writing, lecturing and teaching, see id. at 827; Fitzgerald believed that he was entitled to a total recovery of $70,748.62, but the Air Force thought that that should be reduced by some portion of Fitzgerald's earnings from his writing and teaching.

The Air Force sought the advice of the Comptroller General, who replied on May 6, 1974, that "the amount received . . . during the period of his separation need not be deducted from his backpay to the extent that he is able to establish the volume of such lecturing and writing activities prior to his separation." Id. at 828; see 5 C.F.R. § 550.804(e); Federal Personnel Manual,

Supp. 990–2, bk. 550, subch. 8, subpara. S8–5f. The decision also indicated that no interest for the period of separation was recoverable. 53 Comp.Gen. at 829.

Soon after the Comptroller General's decision was issued, on May 18, 1974,[5] the Air Force paid Fitzgerald $34,498.39 to which it agreed he was entitled in any case. As to the remainder, however, it sought affidavits from Fitzgerald comparing his earnings from writing and teaching during separation with his earnings from those activities in the most recent years of his employment. While Fitzgerald submitted documents purporting to establish that his earnings level had remained constant after separation, the Air Force was dissatisfied, and again sought the advice of the Comptroller General. On October 18, 1974, Fitzgerald and the Air Force were informed that the documentation submitted had been insufficiently specific, and that "further backpay payment should not be made pending receipt and analysis of the detailed data requested." Decision of the Comptroller General in File No. B–162578, 54 Comp.Gen. 288, 290 (1974).

Fitzgerald supplied the requested information on April 11, 1975, and the Comptroller General found that it "sufficiently establishe[d] the comparability of the lecturing and teaching activity before and after separation. . . . Accordingly . . no deduction need be made from his backpay . . . ." Decision of the Comptroller in File No. B–162578, slip op. at 5–6 (June 19, 1975). On June 19, 1975, the Air Force paid Fitzgerald the remaining $38,250.23 he claimed.[6]

---

ty under applicable law or regulation to have undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction[s] of all or a part of the pay, allowances, or differentials of the employee—

(1) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect an amount equal to all or any part of the pay, allowances, or differentials, as applicable, that the employee normally would have earned during that period if the personnel action had not occurred, less any amounts earned by

him through other employment during that period . . . .

5. See note 6 infra.

6. The parties in their briefs differ as to the exact dates of both the May, 1974, and the June, 1975, payments. We will assume for all purposes that the correct dates were May 18, 1974, and June 19, 1975, because Fitzgerald's accountant's affidavit, submitted in support of his jurisdictional allegations, indicates that these were the dates used for calculation of the interest sought to be recovered.

On September 2, 1976, Fitzgerald's request for reconsideration of the decision to deny him recovery of interest was denied by the Comptroller General. Soon thereafter, this suit was commenced; it relied on the Back Pay Act and the Veterans Preference Act in seeking $8,269.78 in interest on the amount constructively earned during the three-and-one-half-year-long period of separation, and on 31 U.S.C. § 227[7] in seeking $5,543.16 in interest[8] on the amounts withheld by the Air Force subsequent to the September 1973 decision of the Civil Service Commission. Judge Smith granted the government's motion to dismiss on the grounds that 1) the Back Pay Act did not waive the United States' sovereign immunity with respect to interest; and 2) 31 U.S.C. § 227 did not apply to a claim against the United States not reduced to judgment. This appeal followed.

## II

Fitzgerald cites the mandate for "corrective action" in the Veterans Preference Act, and the "make whole" policy of the Back Pay Act as evidence that Congress intended to waive sovereign immunity with respect to so natural and common a remedy as interest. Were we free to decide whether the policies of these remedial statutes called for the recovery of interest, we might well agree with him. But we are not so free.

Very recently, the Supreme Court has reemphasized that

the United States, as sovereign, "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." . . . And it has been said . . . that a waiver of traditional sovereign immunity "cannot be implied but must be unequivocally expressed."

*United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976) (citations omitted). Specifically in the context of interest, the Court has ruled that "the intention of Congress to permit the recovery of interest must be expressly and specifically set forth in the statute. . . Mere use of the term 'just compensation,' without more, is no substitute for an express provision for interest." *United States v. Thayer-West Point Hotel Co.*, 329 U.S. 585, 590, 67 S.Ct. 398, 400, 91 L.Ed. 521 (1947) (citations omitted).

■ It was these and similar authorities that led the Sixth Circuit to conclude that the Back Pay Act does not authorize an award of interest, since Congress omitted interest from the otherwise quite detailed relief for which it provides. *Van Winkle v. McLucas*, 537 F.2d 246, 248 (6th Cir. 1976) (per curiam), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1105, 51 L.Ed.2d 539 (1977). We must agree; and we do not believe that the re-

---

**7.** 31 U.S.C. § 227 (1976) deals with the method of handling judgments against the United States when the government claims an offset:

When any final judgment recovered against the United States duly allowed by legal authority shall be presented to the Comptroller General of the United States for payment, and the plaintiff therein shall be indebted to the United States in any manner, whether as principal or surety, it shall be the duty of the Comptroller General of the United States to withhold payment of an amount of such judgment equal to the debt thus due to the United States . . . . [I]f such plaintiff denies his indebtedness to the United States, or refuses to consent to the set-off, then the Comptroller General of the United States shall withhold payment of such further amount of such judgment as in his opinion will be sufficient to cover all legal charges and costs in prosecuting the debt of the United States to final judgment. And if such debt is not already in suit, it shall be the duty of the Comptroller General of the United States to cause legal proceedings to be immediately commenced to enforce the same, and to cause the same to be prosecuted to final judgment with all reasonable dispatch. *And if in such action judgment shall be rendered against the United States, or the amount recovered shall be less than the amount so withheld as before provided, the balance shall then be paid over to such plaintiff by such Comptroller General of the United States with 6 per centum interest thereon for the time it has been withheld from the plaintiff.* (Emphasis added.)

**8.** All interest amounts were calculated as at 6% per annum, compounded monthly.

sult can be any different with respect to the Veterans Preference Act.[9]

## III

When a judgment is rendered against the United States, for a sum certain, in favor of a person who may be independently indebted to the United States, then 31 U.S.C. § 227 requires the Comptroller General to withhold from the judgment creditor an amount equal to the debt owed the United States plus the costs of prosecuting that debt; if the judgment creditor turns out, in fact, not to be so indebted, then the amount withheld must be returned, with 6% interest.

■ This statute is inapplicable to Fitzgerald on two grounds: 1) he was not a judgment creditor; and 2) he was not thought possibly to be independently indebted to the United States.

The first ground is established by the history of the statute and the decision in *Whitbeck v. United States,* 77 Ct.Cl. 309, 342–43, *cert. denied,* 290 U.S. 671, 54 S.Ct. 90, 78 L.Ed. 579 (1933). From 1875 to 1933, the predecessor of section 227 applied to "any final judgment recovered against the United States *or other claim duly allowed by legal authority." See* 18 Stat. 481 (1875) (emphasis added). The 1933 amendment of this section was explicitly intended to limit its application to those whose claims were reduced to a final judgment for a sum certain, not merely "allowed" by some agency. *See* S.Rep. No. 1021, 72d Cong., 2d Sess., at 8 (1933); H.Conf.Rep. No. 2182, 72d Cong., 2d Sess., at 13–14 (1933).

*Whitbeck, supra,* held that a contract claim allowed by the Navy Department did not come within the amended statute. We are unpersuaded by Fitzgerald's attempts to distinguish the allowance in *Whitbeck* from the Civil Service Commission's allowance here. The decision of the Commission was not, as Fitzgerald contends, an award of a sum certain in the form of a judgment. It was a ruling that Fitzgerald was entitled to the remedy provided by the Back Pay Act, which, by its terms, requires some non-mechanical calculations. The three opinions of the Comptroller General cited above reveal the extent to which the calculations in the instant case were not self-evident, and thus the extent to which the Civil Service Commission's ruling was not a judgment for a sum certain.

Moreover, as to the second ground, the language of section 227 clearly contemplates that the judgment creditor will be thought to be indebted to the United States in some manner capable of suit by the government. It is expressly made the Comptroller General's duty to enforce and prosecute the debt; the inference is compelling that the liability in question must be independent of the creditor's judgment, or at least be capable of standing apart from it.

It has never been claimed that Fitzgerald was thus indebted to the United States. The only debt at issue was that owed *to* Fitzgerald *by* the United States; the only question raised was the size of that debt. There was no independent liability for the Comptroller General to enforce and prosecute; his only involvement was to give advice when the Air Force sought it as to how much might be deducted from the Air Force's liability to Fitzgerald. Because the situation at bar fits so ill into the language of section 227, we cannot believe that that statute was ever intended to apply to such a situation. Since Congress has not expressly provided for the recovery of interest by one in Fitzgerald's position, he may not recover it.

## IV

Many years ago, Justice Holmes remarked on the injustices to an individual

---

9. Fitzgerald is not helped by the opinion in *Gilbert v. Johnson,* 490 F.2d 827 (5th Cir. 1974), which awarded interest on a judgment against the Veterans Administration. That case relied on the doctrine of *National Home for Disabled Volunteer Soldiers v. Parrish,* 229 U.S. 494, 33 S.Ct. 944, 57 L.Ed. 1296 (1913), which applies to separate corporate bodies within the government, independently vested with the power to sue and be sued. *See North N.Y. Sav. Bank v. FSLIC,* 169 U.S.App.D.C. 384, 393 & n.12, 515 F.2d 1355, 1364 & n.12 (1975).

that may result from the application of the doctrine of sovereign immunity. Even such universal principles as *"lex non praecipit inutilia"* must bend if the government so insists, for "Men must turn square corners when they deal with the Government." *Rock Island, Arkansas & Louisiana R.R. v. United States,* 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920) (Holmes, J.).

Though Fitzgerald undoubtedly deserves to be "made whole" by his government, he may not recover interest in the absence of an explicit authorization. "Additional remedies of this kind are for the Congress to provide and not for the courts to construct." *United States v. Testan, supra,* 424 U.S. at 404, 96 S.Ct. at 956. Accordingly, the order of the district court is affirmed.