626 F.2d 891

**Margaret Toomer BLAKE et al., Appellants,**

v.

**Joseph A. CALIFANO, Secretary of the Department of Health, Education and Welfare, et al., Appellees.**

No. 78–2075.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 20, 1979.

Decided Jan. 30, 1980.

---

Glenn H. Carlson, Washington, D. C., with whom C. Frederick Ryland, Washington, D. C., was on brief, for appellants.

Norman M. Monhait, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty. and John A. Terry, Peter E. George, and Stephen S. Cowen, Asst. U. S. Attys., Washington, D. C., were on brief, for appellees.

Before ROBINSON and ROBB, Circuit Judges, and DAVIS, Judge, United States Court of Claims.*

Opinion for the Court filed by DAVIS, Judge.

DAVIS, Judge:

Appellants are federal employees who have received retroactive promotions and back pay because they were victims of sex discrimination prohibited by the Equal Employment Opportunity Act of 1972, Pub.L. No.92–261, 86 Stat. 103.[1] The issue is whether their back pay awards should have reflected an award of prejudgment interest or should have been adjusted by an inflation factor to account for the decline of the purchasing power of the dollar between the time of the discrimination and the time of the award. In the District Court, on cross-motions for summary judgment on this point, Chief Judge Bryant held that the court did not have authority to order the United States to pay either prejudgment

---

\* Sitting by designation pursuant to 28 U.S.C. § 293(a) (1976).

1. Section 11 of the Act added section 717 to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1976). References to Title VII are to that Title as amended by the 1972 Act.

interest or a sum in addition to back pay to reflect inflation. We affirm.

The plaintiffs are five women who were employed as nursing assistants at the Clinical Center, National Institutes of Health. They brought this sex-discrimination action in March 1976, but no trial on the merits was held in the District Court. As the result of administrative decision or agreement of the parties, it was determined that they had each been denied promotion from a GS–4 to a GS–5 position as the result of sex discrimination. The parties settled the complaint that they were also discriminated against in consideration for promotion from GS–3 to GS–4. By the winter of 1976 each of the plaintiffs had received retroactive promotion and back pay.[2] The only question remaining for decision by the District Court was that now before us—addition of prejudgment interest or, alternatively, of an inflation factor.

Without such a supplement, appellants say, their awards give them an incomplete remedy, especially in view of the considerable time elapsed since their injuries occurred (see note 2, *supra*). They note that prejudgment interest has been awarded by some courts under Title VII in private-sector cases,[3] and urge that to deny this reme-dy to federal employees is to relegate them to second-class status. They argue that the automatic preclusion of an award of interest or an adjustment for inflation is contrary to the remedial provision of Title VII referring to "any other equitable relief as the court deems appropriate,"[4] as well as to the Congressional purpose, in adopting the Equal Employment Opportunity Act of 1972, to extend the protections of Title VII to federal personnel.

We take the other view because (a) there is a long-established, deeply-imbedded principle that interest is not allowed on monetary claims against the Federal Government unless Congress (or a contract) plainly authorizes such an addition,[5] and (b) in the light of this traditional doctrine we are not persuaded by the text, legislative history, or purposes of the 1972 extension of Title VII to federal workers that Congress has provided for this kind of relief to such employees.

There is no doubt as to the historical existence of an entrenched immunity of the Government from prejudgment interest, in the absence of authorization by Congress (or, in the case of a contract, the contracting parties). The Supreme Court has reiterated it many times for about a century.

---

**2.** According to the stipulation of the parties, appellants were entitled to and received back pay from the following dates:
   a. Appellant Blake, August 22, 1971;
   b. Appellant Hines, July 13, 1971;
   c. Appellant Hill, January 12, 1969;
   d. Appellant Jordan, November 2, 1969;
   e. Appellant Riddle, April 20, 1970.

**3.** *See, e. g., Chastang v. Flynn and Emrich Co.,* 381 F.Supp. 1348 (D.Md.1974), aff'd, 541 F.2d 1040 (4th Cir. 1976); *Howard v. Ward County,* 418 F.Supp. 494 (D.N.D.1976); *DiSalvo v. Chamber of Commerce,* 416 F.Supp. 844 (W.D. Mo.1976), *modified,* 568 F.2d 593 (8th Cir. 1978). *See, also, Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 263 (5th Cir. 1974).

**4.** 42 U.S.C. § 2000e–5(g) reads in pertinent part:
   If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay * * *, *or any other equitable relief as the court deems appropriate* (emphasis added).

**5.** Only an "apparent exception" is the allowance in inverse eminent domain cases of interest as part of the constitutional measure of just compensation. *Smyth v. United States,* 302 U.S. 329, 353–54, 58 S.Ct. 248, 252–253, 82 L.Ed. 294 (1937), *United States v. Thayer-West Point Hotel Co.,* 329 U.S. 585, 588, 67 S.Ct. 398, 399, 91 L.Ed. 521 (1947); *Jacobs v. United States,* 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933).

See Tillson v. United States, 100 U.S. 43, 47, 25 L.Ed. 543 (1879); Angarica v. Bayard, 127 U.S. 251, 260, 8 S.Ct. 1156, 1160, 32 L.Ed. 159 (1888). Seaboard Air Line Ry. v. United States, 261 U.S. 299, 304, 43 S.Ct. 354, 355, 67 L.Ed. 664 (1923); Smyth v. United States, 302 U.S. 329, 353, 58 S.Ct. 248, 252, 82 L.Ed. 294 (1937); United States v. Goltra, 312 U.S. 203, 207, 61 S.Ct. 487, 490, 85 L.Ed. 776 (1941); United States v. Thayer-West Point Hotel Co., 329 U.S. 585, 588, 67 S.Ct. 398, 399, 91 L.Ed. 521 (1947); United States v. New York Rayon Importing Co., 329 U.S. 654, 658–59, 67 S.Ct. 601, 603–604, 91 L.Ed. 577 (1947); United States v. Alcea Band of Tillamooks, 341 U.S. 48, 49, 71 S.Ct. 552, 553, 95 L.Ed. 738 (1951). This court has followed suit. Whittier v. Emmet, 108 U.S.App.D.C. 191, 198–99, 281 F.2d 24, 31–32 (1960), cert. denied, 364 U.S. 935, 81 S.Ct. 380, 5 L.Ed.2d 367 (1961); Fitzgerald v. Staats, 188 U.S.App.D.C. 193, 578 F.2d 435, cert. denied, 439 U.S. 1004, 99 S.Ct. 616, 58 L.Ed.2d 680 (1978). And Congress has declared in 28 U.S.C. § 2516(a) that "Interest on a claim against the United States shall be allowed in a judgment of the Court of Claims only under a contract or Act of Congress expressly providing for payment thereof." [6]

For this case it makes no difference whether one phrases this firmly-established rule as calling in all cases for some specific or express legislation authorizing interest (see, e. g., United States v. Thayer-West Point Hotel Co., 329 U.S. at 588, 590, 67 S.Ct. at 399, 400), or more simply for a statute evincing the intention to allow interest (Smyth v. United States, 302 U.S. at 353, 58 S.Ct. at 252). Under either formulation there is here no statute which overcomes the traditional principle. Appellants rely on the broad authorization for "other equitable relief" in 42 U.S.C. § 2000e–5(g) (note 4, supra). We agree, however, with the two Courts of Appeals which have ruled on the issue and have held that this language is insufficient to constitute the necessary statutory authority where the complainant is a federal employee. Richerson v. Jones, 551 F.2d 918, 925 (3d Cir. 1977); Fischer v. Adams, 572 F.2d 406, 411 (1st Cir. 1978). While it may not be unreasonable to infer that "equitable relief" can cover an award of interest in private-sector cases, there is nothing to indicate that Congress affirmatively intended this for the federal sector. The legislative history is wholly silent on the propriety of awarding interest in Title VII cases. Without some further indication in statutory language or in legislative history, "equitable relief" is too wide and general a category to outbalance, by itself, the specific entrenched immunity of the Government from prejudgment interest.[7] The Supreme Court has found lan-

6. Appellants point out that, in terms, this statute is limited to cases in the Court of Claims, and on that ground seek to distinguish the Supreme Court opinions cited above in the text, most of which were rendered in cases coming from the Court of Claims. But in construing this statutory limitation or its predecessors, the Supreme Court has invariably indicated that it is merely a legislative embodiment of the traditional legal rule. E. g. Tillson, 100 U.S. at 47, 25 L.Ed. 543 (noting "the practice which has long prevailed in the departments of not allowing interest on claims presented, except it is in some way specially provided for * * *"); Goltra, 312 U.S. at 207, 61 S.Ct. at 490 (saying that the statute "accords with the traditional immunity of the Government from the burden of interest unless it is specifically agreed upon by contract or imposed by legislation."); Thayer-West Point Hotel Co., 329 U.S. at 588, 67 S.Ct. at 399 (the statute "embodies the traditional rule that interest cannot be recovered against the United States upon unpaid accounts or claims in the absence of an express provision to the contrary in a relevant statute or contract."); New York Rayon Co., 329 U.S. at 658, 67 S.Ct. at 603 ("this provision codifies the traditional rule regarding the immunity of the United States from liability for interest on unpaid accounts or claims"); Alcea Band of Tillamooks, 341 U.S. at 49 (citing the statute as support for the Court's statement of the "traditional rule").

7. An old Attorney General's opinion (on which appellants rely) puts it this way: "if Congress intend a party shall have interest, it can say so; and, unless it be said expressly, they must be words of very potent implication, which contradict effectually the general doctrine of the Government." [7 Op. Att'y Gen. 523, 528 (1855)] (emphasis added).

guage conceptually similar to that in 42 U.S.C. § 2000e–5(g) to be an inadequate expression of a waiver of this immunity. *See, e. g., Tillson v. United States,* 100 U.S. 43, 45, 25 L.Ed. 543 (1879) ("such court is authorized and directed to investigate the same, and to ascertain, determine, and adjudge the amount *equitably* due such firm, if any, for such loss and damage."); *United States v. Thayer-West Point Hotel Co.,* 329 U.S. 585, 590, 67 S.Ct. 398, 91 L.Ed. 521 (1947) ("Said lease * * * shall also provide for *just compensation* to the lessees for the construction of said hotel, appurtenances, and equipment, to be paid to said lessees at the termination of said lease.") (emphasis added). Moreover, while an award of prejudgment interest would be consistent with the remedial policies of Title VII, mere consistency with statutory purposes is not enough. In *Fitzgerald v. Staats,* 188 U.S. App.D.C. 193, 578 F.2d 435, *cert. denied,* 439 U.S. 1004, 99 S.Ct. 616, 58 L.Ed.2d 680 (1978), we considered whether prejudgment interest could be assessed against the United States under the Back Pay Act or the Veterans Preference Act. In holding that it could not, we concluded that we were not free to make a decision to allow interest based on the remedial purposes of those statutes. *Id.* at 196, 578 F.2d at 438. We can give no greater weight to the comparable remedial purposes of Title VII.[8]

■ The same result must be reached for appellants' alternative contention that they are entitled to increases in their back-pay awards to compensate for the loss of the dollar's value due to inflation. We assume *arguendo* that interest and an inflation adjustment are distinct remedies,[9] but the settled governmental immunity from interest counsels against this similar supplementation (in the absence of clear Congressional authorization). Both interest and an inflation adjustment serve the same general end of compensating the recipient for differences in the worth of her award between the date of actual receipt and the date as of which the money should have been paid. If one is barred the other should also be; the same considerations govern. *Cf. Nooksack Tribe of Indians v. United States,* 162 Ct.Cl. 712, 718 (1963), *cert. denied,* 375 U.S. 993, 84 S.Ct. 633, 11 L.Ed.2d 479 (1964); *United States v. Delaware Tribe,* 192 Ct.Cl. 385, 392–96, 427 F.2d 1218, 1222–24 (1970). In addition, appellants have been unable to offer any example of a back-pay award under Title VII being augmented to account for inflation, even in a private case. In the light of the special need for a waiver of sovereign immunity in suits against the Government (*United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *Fitzgerald v. Staats, supra,* 188 U.S.App.D.C. at 196, 578 F.2d at 438) this case is *a fortiori,*

*Affirmed.*

---

8. In extending Title VII to federal employees, Congress contemplated that there could be differences between the cases of private-sector employees and of federal workers. 42 U.S.C. § 2000e–16(d) (added by the 1972 Act) provides that "[t]he provisions of section 2000–5(f) through (k) of this title, *as applicable,* shall govern civil actions brought hereunder" (emphasis added).

9. To prove this distinction, appellants offered the deposition of Patrick Jackman, chief of the Branch of Consumer Price Indexes of the United States Department of Labor. He seems to conclude that an inflation adjustment and interest are conceptually different, but are, as a practical matter, interrelated. Because of the disposition we make in this case, we need not attempt to solve this subtle economic puzzle.