**Richard KRODEL, Plaintiff,**

v.

**Andrew J. YOUNG, et al., Defendants.**

**Civ. A. No. 80–3183.**

United States District Court,
District of Columbia.

Oct. 8, 1985.

Roy J. Bucholtz, Reston, Va., for plaintiff.

Kathryn Ferger, and Shirley Huang, Civil Div., Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

FLANNERY, District Judge.

This matter comes before the court on plaintiff's motion for addition to award of attorney's fees and costs, plaintiff's motion for interest on award of back pay, and plaintiff's former attorney Patricia J. Bar-

ry's application for issuance of an order to show cause regarding contempt. For the reasons set forth below, plaintiff's motions and attorney Barry's application are denied.

## I. *Background*

On February 9, 1983, this court issued a judgment and order awarding plaintiff back pay under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* (1982) in the amount of the differential, with all increases and benefits, between the salary plaintiff would have earned at Grade 13 and the salary he was paid at Grade 12, retroactive to April 11, 1976.

On December 8, 1983, this court issued a judgment and order awarding plaintiff attorney's fees under the ADEA in the amount of $33,939.00. This figure represented $29,864.00 in attorney's fees for Roy J. Bucholtz, $1,950.00 in attorney's fees for Patricia J. Barry, and $2,125.00 in costs, 576 F.Supp. 390 (1983).

Defendants filed an appeal of this court's order awarding back pay and, on November 20, 1984, the Court of Appeals issued an opinion affirming the order. *Krodel v. Young,* 748 F.2d 701 (D.C.Cir.1984).

Though defendants also filed an appeal of the order awarding attorney's fees and costs, defendants subsequently moved to voluntarily dismiss that appeal in light of the Court of Appeals' affirmation on the merits. This motion to dismiss was granted on March 15, 1985.

On April 4, 1985, plaintiff filed both a motion for interest on the award of back pay and a motion for an addition to the award of attorney's fees and costs. Plaintiff argues that the defendant has engaged in unwarranted delay tactics in paying the award and in doing so has damaged plaintiff.

On April 15, 1985, the attorney who initially represented plaintiff in this suit but who was later replaced, Patricia J. Barry, applied to this court for the issuance of an order to show cause regarding contempt

against defendants Department of Health and Human Services and its Secretary for failure to pay the award. Barry had been informed by one of defendants' attorneys that she would be paid by early April.

## II. *Discussion*

The central question that arises in this case is to what degree a losing defendant in an ADEA case can be held accountable for delay of payment of the amount awarded to plaintiff when defendant is the United States. It is best to deal with the two motions separately.

### a. *Motion for Interest on Award of Back Pay*

With regard to the delay in the payment of the award of back pay, although this court's judgment granting the award to plaintiff issued on February 9, 1983, defendant pursued a bona fide appeal, completely briefed and argued, which ended on November 20, 1984, with an affirmation by the Court of Appeals of this court's order. Defendants then sought and received a short extension of time pending a final determination of whether the government would seek further Supreme Court review. The Solicitor General decided not to seek further appellate review, and on February 19, 1985, defendants moved to dismiss voluntarily their attorney's fees appeal, which was granted by the Court of Appeals on March 15, 1985. Defendants assert that they were prepared at this point to take the proper administrative steps to secure payment of the award to plaintiff, which is normally a six-week process, but were prevented from doing so by the filing on April 4, 1985, of the motions at issue in this memorandum.

In a somewhat inartful memorandum that spends more time discussing attorney's fees than back pay, plaintiff argues that due to this delay plaintiff is entitled to interest on the back pay since February 9, 1983, to the present because of the damage to plaintiff in not being paid. Such an award would be inappropriate. The General Accounting Office cannot pay an award until the judgment is final. 28 U.S.C. § 2414 (1982). The award of back pay was not final until the Solicitor General decided on February 19, 1985, that certiorari to the Supreme Court would not be sought. Arguably, the fact that an appeal on the attorney's fees judgment was still pending until March 15, 1985, and the fact that the motions considered in this memorandum are still under consideration until the present time, have no relevance to the finality of the judgment awarding back pay. Therefore, plaintiff would have done much better to argue that interest should be paid from February 19, 1985, to the present.

█ Yet defendants offer a convincing argument for why even interest from February 19, 1985, to the present should not be granted by this court. Generally, the United States may not be held liable for interest on a claim absent an unequivocal and express waiver of sovereign immunity by contract or by Congress. *See* 28 U.S.C. § 2516(a) (Supp.1985); *United States v. Louisiana,* 446 U.S. 253, 264–65, 100 S.Ct. 1618, 1626, 64 L.Ed.2d 196 (1980) (agreement that proceeds of mineral leases on lands off Louisiana Gulf Coast be held in custody by United States did not give rise to an obligation to pay interest absent an express provision to that affect); *Segar v. Smith,* 738 F.2d 1249, 1295–96 (D.C.Cir. 1984) (in 1964 Civil Rights Act Title VII action, where classwide back pay was appropriate remedy, pre-judgment interest was not recoverable).

Indeed, there is no support in caselaw for assessing pre-judgment or post-judgment interest on back pay awards against the United States, even in Title VII cases. *Blcke v. Califano,* 626 F.2d 891 (D.C.Cir. 1980) (federal employees who received retroactive promotions and back pay because they were victims of sex discrimination were not entitled to pre-judgment interest or a sum in addition to back pay to reflect inflation).

█ Plaintiff says that waiver of sovereign immunity of the United States from

liability for interest on awards of back pay can be found in Section 15(c) of the ADEA:

Any person aggrieved may bring a civil action to any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter.

29 U.S.C. § 633a(c) (1975). Plaintiff's only support for reading this as an unequivocal and express waiver regarding interest on back pay is *Shaw v. Library of Congress,* 747 F.2d 1469 (D.C.Cir.1984). Reliance on *Shaw* in this case is misplaced, however, because: (1) *Shaw* dealt with interest as a component of attorney's fees, not back pay; (2) *Shaw* dealt with Title VII, and relied heavily on language in Title VII that in addition to a reasonable attorney's fee, "the United States shall be liable for costs the same as a private person," 42 U.S.C. § 2000e–5(k) (1982); and (3) *Shaw* recognized the rule in this circuit that interest on back pay awards may not be assessed against the United States, even in Title VII cases. *Shaw,* 747 F.2d at 1484, n. 120. Therefore, there is no support for plaintiff's claim to interest on the award of back pay for any period of time and therefore the plaintiff's motion with regard to back pay is denied.

### b. *Motion for Addition to Award of Attorney's Fees and Costs*

[3] With regard to the delay of payment of the award of attorney's fees and costs, although this court's judgment granting the award to plaintiff issued on December 8, 1983, defendant argues that it filed a bona fide appeal of that judgment which prevented the judgment from becoming final until March 15, 1985, when the Court of Appeals granted defendants' voluntary motion to dismiss. Defendants assert that they were prepared at this point to take the proper administrative steps to secure payment of the award to plaintiff, which is normally a six-week process, but were prevented from doing so by plaintiff's filing on April 4, 1985, of the motions at issue in this memorandum.

Plaintiff argues that due to this delay, plaintiff is entitled to an additional amount of attorney's fees and costs, which might be considered interest, for the damage to plaintiff in not being paid since December 8, 1983. As with plaintiff's other motion, such an award would be inappropriate since the General Accounting Office cannot pay such an award until the judgment is final. The award of attorney's fees and costs was not final until the Court of Appeals dismissed defendants' appeal on March 15, 1985. Apparently, plaintiff believes that defendant should pay an additional amount for the delay created first in asking for a postponment for briefing but then in never actually submitting briefs, and instead voluntarily moving for dismissal of its own appeal. Yet it is clear from the record that defendant was simply waiting for its appeal on the merits to complete its course before proceeding to deal with the appeal on attorney's fees, and that once defendant had lost the appeal on the merits, it decided not to proceed with its other appeal.

Arguably, once the appeal on the attorney's fees judgment was dismissed on March 15, 1985, defendant was obligated to pay the award since the decision was final and any motion by plaintiff for additional attorney's fees was irrelevant to that finality. Yet defendant again argues that the government has sovereign immunity against any claim for interest absent an unequivocal and express waiver.

Plaintiff's reliance on *Shaw* for why such immunity has been waived under the ADEA has more weight in the area of attorney's fees. *Shaw* held that Title VII expressly waived immunity of the United States from liability for interest as a component of an attorney's fees award allowed under Title VII. The *Shaw* court awarded an addition to attorney's fees based on the delay by defendant. Since both Title VII and the ADEA contain similar precepts and remedial natures, and since courts have used caselaw under Title VII as a guide in developing caselaw under ADEA, *see, e.g., Krodel v. Young,* 576 F.Supp. 390 (D.D.C. 1983), *aff'd,* 748 F.2d 701 (D.C.Cir.1984), plaintiff argues that the ADEA should be construed the way Title VII was in *Shaw*

as allowing an additional award for attorney's fees when defendant has delayed payment of the claim.

Defendant argues that for several reasons reliance on *Shaw* is misplaced even with regard to attorney's fees. First, as noted above, the *Shaw* court examined Title VII and relied heavily on the language in 42 U.S.C. § 2000e–5(k) to say that since private persons may be held liable for interest as an ingredient of a Title VII attorney's fees, so should the United States. *Shaw*, 747 F.2d at 1475–79. Further, the court said that use of such language by Congress relaxes the traditional rigor of the sovereign immunity doctrine. 747 F.2d at 1479–84. Again defendant points out that the ADEA contains no language equating the liability of the United States with that of private parties as appears in Title VII. Instead, when Congress in 1974 amended the ADEA with Section 15 to extend its coverage to federal government employees, Congress "deliberately prescribed a distinct statutory scheme applicable only to the federal sector" and no waiver of sovereign immunity with regard to federal employees can be predicated on the existence of rights and remedies in the enforcement of provisions for private employees. *Lehman v. Nakshian*, 453 U.S. 156, 166–68, 101 S.Ct. 2698, 2704–05, 69 L.Ed.2d 548 (1981) (Congress, in amending the ADEA so as to bring federal government within the Act's scope, did not grant right to jury trial to federal employees suing government under the Act).

Second, *Shaw* rejected non-specific wording such as language entitling parties to "any other equitable relief as the court deems appropriate" as being sufficient to find a waiver of sovereign immunity. Defendant argues that the ADEA Section 15(c) language cited above allowing "such legal or equitable relief as will effectuate the purposes of this chapter" fails this standard of specificity.

Finally, *Shaw* and most cases deal with pre-judgment interest on attorney's fees, meaning an upward adjustment in the amount charged by the attorney to reflect the delay between rendering of services and the award of attorney's fees and costs. Plaintiff cites no authority supporting an award of post-judgment interest. Yet it is clear that Congress has expressly waived immunity of the United States from such claims in other areas when Congress sees fit to do so. *See, e.g.*, 28 U.S.C. § 2411 (1982) (pre- and post-judgment interest payable by the United States in tax refund cases).

### c. Application for Issuance of OSC Re: Contempt

This court declines to determine at this time whether attorney Barry has standing to apply to this court for an order to show cause regarding contempt for nonpayment of attorney's fees. The discussion above shows that payment of the award has been held up by the appeals process and by plaintiff's motions for additional awards, and not by defendants disregard of this court's order. Barring further appeals, payment of the awards should now proceed with due diligence on the part of defendants. Therefore, an issuance of an OSC Re: Contempt order at this time would be premature and inappropriate.

### III. Conclusion

The passage of time central to plaintiff's claims is a necessary feature of our system of justice. When an order of this court issues, the defendant has a right to properly notice an appeal of that order. Until such appeal is no longer before the Court of Appeals, the decision is not final for purposes of payment by the United States of any awards, and defendant is not obligated to pay the award. Any delay in payments of the award beyond such an appeal process is only actionable so far as the government has waived its sovereign immunity from further payments. Plaintiff has not shown any congressional intent in the ADEA to permit the collection of post-judgment interest on attorney's fees. Such an interpretation is not essential to the proper functioning of the act. Instead, whenever there is an unreasonable delay in

payment of an award by the court, plaintiff is free to seek an order from this court compelling payment.

There is no indication that the government vindictively or frivolously sought to delay payment of the award. Rather, it genuinely sought a reversal of this court's order. When the order was affirmed and once all motions for appeal were no longer before the Court of Appeals, defendant says it was willing to pay the award. This Court has no reason to disbelieve defendants, and expects defendants to promptly pursue payment of the original award now that this court has denied plaintiff's requests for additional awards of back pay, attorney's fees and costs.